UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC.,<br><br>*Plaintiffs,*<br><br>v.<br><br>OPTO ELECTRONICS CO., LTD.,<br><br>*Defendant.* | Civil Action No. 3:21-cv-00506<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiffs Honeywell International Inc., Hand Held Products, Inc., and Metrologic Instruments, Inc. (collectively, "Honeywell" or "Plaintiffs"), by and through their undersigned counsel, file this Complaint against Defendant OPTO Electronics Co., Ltd. ("Opticon" or "Defendant") and allege the following:

## **PARTIES**

1. Plaintiff Honeywell International Inc. is a Delaware corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

2. Plaintiff Hand Held Products, Inc. is a Delaware corporation and a wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

3. Plaintiff Metrologic Instruments, Inc. is a New Jersey corporation and wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

4. Defendant OPTO Electronics Co., Ltd. is, upon information and belief, a company organized and existing under the laws of Japan, having a principal place of business at 12-17 Tsukagoshi 4-chrome, Warabi-city Saitama Pref., 335-0002, Japan.

## JURISDICTION AND VENUE

5. The Court has subject-matter jurisdiction based on diversity under 28 U.S.C. § 1332(a) as Plaintiffs, on the one hand, and Defendant on the other, are citizens of different states, and the amount in controversy exceeds $75,000, excluding interests and costs.

6. The License and Settlement Agreement giving rise to this dispute was executed on January 22, 2020, by Honeywell and OPTO Electronics Co., Ltd. (the "Agreement"). A true and accurate copy of the Public Version of the Agreement, which was filed at the International Trade Commission in connection with the settlement of that dispute, is attached hereto as Exhibit A. The Public Version of the Agreement redacts certain provisions deemed confidential by one or both of the parties thereto.

7. Personal jurisdiction over Defendant is appropriate because the parties to the Agreement consented to the exclusive jurisdiction of courts in the State of North Carolina over any suit, action, or proceeding arising out of or relating to the Agreement.

8. Venue in this District is appropriate because the Agreement between the parties to this dispute states that any dispute arising out of the Agreement must be brought in the appropriate state or federal courts of the State of North Carolina.

9. Venue in this District is also appropriate under 28 U.S.C. § 1391.

# FACTUAL ALLEGATIONS

## PRIOR LITIGATION BETWEEN THE PARTIES

10. On May 31, 2019, Honeywell filed a Complaint for Patent Infringement against Opticon in the District of Delaware, Civil Number 1-19-cv-01019 (the "Delaware Action").

11. On May 31, 2019, contemporaneous with the Delaware Action, Honeywell filed a Complaint under Section 337 of the Tariff of Act of 1930 at the United States International Trade Commission, asking the Commission to prohibit entry of certain Opticon products into the United States on the basis that the products infringed certain Honeywell patents.

12. On June 27, 2019, the Commission issued a *Notice of Institution of Investigation*, as to all claims alleged by Honeywell. The Investigation was assigned Investigation Number 337-TA-1165 (the "ITC Investigation").

## SETTLEMENT AND SETTLEMENT AGREEMENT

13. On January 22, 2020, Honeywell and Opticon entered into the Agreement, which resolved the dispute among the parties in the ITC Investigation and in the Delaware Action.

14. Following execution of the Agreement, the parties jointly filed motions to dismiss the Delaware Action on February 21, 2020 and to terminate the ITC Investigation on February 18, 2020. Accordingly, the Delaware Action and the ITC Investigation were subsequently dismissed and terminated, respectively.

15. The terms of the Agreement include a license grant from Honeywell to Opticon. In consideration of this license, the Agreement requires Opticon to pay to Honeywell a specified percent of Opticon's gross revenue derived from the sales of "2D Barcode Products" in the United States.

16. The Agreement defines "2D Barcode Products" as "any device or article of manufacture that is operable to decode at least one or more two-dimensional barcode symbologies into human-readable text. Two-dimensional ('2D') barcode symbologies include, but are not limited to, any two-dimensional barcode symbology defined by one or more standards setting organizations such as the International Organization for Standardization (ISO), International Electrotechnical Commission (IEC), and the Association for Automatic Identification and Mobility (AIM). For the avoidance of doubt, the term '2D Barcode Products' shall include Engines and other products that include a 2D image sensor and are capable of outputting a 2D image that may be used to decode a 2D barcode symbology into human-readable text."

17. Among the 2D Barcode Products that Opticon has sold, and continues to sell, in the United States are at least the following products: OPN-2006; NLB-1000; NLV-1001; RLB-1000; L-46R; OPH-1005; OPH-3001; OPL-6845R; OPL-9815; OPR-2001Z; OPR-2001; OPR-3201; OPR-3201Z; RS-2006/OPN2006; MDL-1000; MDL-1500; MDL-2001; MSL-1000; and OPR-3101.

18. By way of example, the Opticon-published Product Specifications for the L-46R indicate that its "Supported symbologies" include "2D code: PDF417; MicroPDF417" (*see* Exhibit B).

BREACH OF THE AGREEMENT

19. Under Section 5.1 of the Agreement, Opticon made certain representations and warranties to Honeywell, including a representation concerning its gross revenue from sales of 2D Barcode Products over the previous several years ("Opticon's Representations").

20. The Agreement also contains certain audit provisions that allow Honeywell to review records to verify the accuracy of Opticon's Representations.

21. The Agreement provides that if the audit shows that Opticon's actual revenues exceed the represented amount by a certain margin, then Opticon must pay Honeywell a percentage of the amount of revenue exceeding the amount represented, plus the costs of the audit.

22. On December 16, 2020, Honeywell notified Opticon that it was invoking its audit rights under the Agreement.

23. The audit showed that Opticon's revenues from sales of 2D Barcode Products were actually tens of millions of dollars more than Opticon represented in the Agreement, in part because Opticon had excluded certain 2D Barcode Products from its calculations.

24. Opticon therefore breached its representations and warranties and materially breached the Agreement. Because of that breach, Honeywell is entitled to certain monetary damages specified in the Agreement.

## OVERDUE ROYALTY PAYMENTS

25. Section 4.3 of the Agreement states that Opticon shall pay to Honeywell a royalty. Pursuant to the terms of the Agreement, the royalty is based on Royalty-Bearing Products, which covers any Opticon Licensed Product, which was defined to include 2D Barcode Products.

26. Section 4.6 of the Agreement states that if Opticon fails to make a required royalty payment, then Opticon incurs a late charge of one and a half percent (1.5%) per month on the late payments. Such late charge accrues from the first day after the payment was due.

27. Opticon has failed to include all 2D Barcode Products in its calculation of quarterly royalty payments owed to Honeywell.

28. Based on the plain terms of the Agreement, Opticon is obligated to pay a royalty on its sales of all 2D Barcode Products. Opticon still owes Honeywell a royalty on sales of certain

2D Barcode Products that have not been paid to date, as well as a late charge of one and a half percent (1.5%) per month on the amounts not paid when they were originally due.

## FEES AND COSTS

29. Section 4.7 of the Agreement states that in the event a party institutes an action to collect any overdue payments, that party shall be entitled to its fees and costs incurred with respect to such action.

## COUNT I
## Breach of Contract

30. Honeywell incorporates, by reference, the allegations contained in Paragraphs 1 – 29 as if set forth herein.

31. The Agreement is a valid and enforceable contract.

32. The Agreement is not ambiguous.

33. Opticon breached its representation under Section 5.1 of the Agreement.

34. Due to Opticon's breach of its Section 5.1 representation, it owes Honeywell the monetary damages set forth in Section 5.1.

35. Opticon has not paid, and continues to fail to pay, the full royalty delineated in Section 4 of the Agreement.

36. Due to Opticon's breach of Section 4 of the Agreement, it owes Honeywell the missing royalties defined in that section.

37. Opticon also owes Honeywell a late fee of one and a half percent (1.5%) per month for the missed royalty payments.

38. Honeywell has been and continues to be damaged as a result of Opticon's breach.

39. Honeywell is entitled to recover damages resulting from Opticon's breach of the Agreement.

40. Honeywell is entitled to recover its fees and costs incurred with respect to its recovery of the unpaid and overdue payments.

## PRAYER FOR RELIEF

WHEREFORE, Honeywell prays for the entry of a judgment from this Court in its favor and against Opticon and respectfully requests the following relief:

a) That Honeywell recover damages resulting from Defendant's breach of the License and Settlement Agreement;

b) That the Court enter judgment in favor of Honeywell for pre-judgment and post-judgment interest at the legal rate;

c) That the Court award Honeywell its fees and costs incurred with respect to this action;

d) That all costs be assessed against Defendant; and

e) That the Court award such other relief as is just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Honeywell requests a trial by jury on any issues so triable by right.

Dated: September 24, 2021                        Respectfully submitted

/s/ *Mark T. Calloway*
Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Brandon Springer (NC Bar No. 54523)
S. Benjamin Pleune (NC Bar No. 28748)
M. Scott Stevens (NC Bar No. 37828)
Stephen R. Lareau (NC Bar No. 42992)
Lauren N. Griffin (NC Bar No. 54766)
**ALSTON & BIRD LLP**
101 S. Tryon Street
Suite 4000
Charlotte, NC 28280
Telephone: (704) 444-1000
Facsimile: (704) 444-1935

*Counsel for Plaintiffs*
*Honeywell International Inc.,*
*Hand Held Products, Inc., and*
*Metrologic Instruments, Inc.*