UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:21-cv-00506 |
| v. | ) ) | JURY TRIAL DEMANDED |
| OPTO ELECTRONICS CO., LTD., | ) ) | |
| Defendant. | ) | |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, OPTO Electronics Co., Ltd. ("OPTO"), by and through its undersigned counsel, hereby responds to the Complaint filed by Plaintiffs Honeywell International Inc., Hand Held Products, Inc., and Metrologic Instruments, Inc. (collectively referred to herein as "Honeywell" or "Plaintiffs"), and for its Answer and Affirmative Defenses, states as follows:

## PRELIMINARY STATEMENT

OPTO provides this Answer based on a reasonable inquiry and its knowledge to date. Investigations into the matters that are the subject of this Complaint are ongoing. Accordingly, OPTO reserves the right to amend, supplement, revise, clarify or correct the responses set forth below after those investigations have concluded.

Except as expressly admitted or qualified below, OPTO denies each and every allegation of the Complaint.

## THE PARTIES

1.      OPTO is without sufficient knowledge or information to admit or deny the allegations in Paragraph 1 and, therefore, denies the allegations in Paragraph 1.

2.      OPTO is without sufficient knowledge or information to admit or deny the allegations in Paragraph 2 and, therefore, denies the allegations in Paragraph 2.

3.     OPTO is without sufficient knowledge or information to admit or deny the allegations in Paragraph 2 and, therefore, denies the allegations in Paragraph 3.

4.     Admitted.

### JURISDICTION AND VENUE

5.     This paragraph of the Complaint states a legal conclusion for which no answer is required. To the extent that an answer is required, OPTO admits that it is a company organized and existing under the laws of Japan. OPTO admits that this paragraph of the Complaint purports to set forth an amount in controversy exceeding $75,000 but denies that there are any factual or legal bases for Plaintiffs' claims. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 5.

6.     OPTO admits that Exhibit A attached to the Complaint purports to be a true and accurate copy of the January 22, 2020 License and Settlement Agreement between Honeywell and OPTO ("the Agreement") that was submitted to the International Trade Commission as a public version of the Agreement containing certain redactions by the parties of their confidential information. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 6.

7.     For the limited purpose of this action only, OPTO admits that it is subject to the personal jurisdiction of this Court.

8.     This paragraph of the Complaint states a legal conclusion for which no answer is required.  To the extent that an answer is required, OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 8.

9.      This paragraph of the Complaint states a legal conclusion for which no answer is required.  OPTO does not challenge this District being an appropriate venue.  To the extent further response is required Defendant denies the remaining allegations of Paragraph 9.

## FACTUAL ALLEGATIONS

### PRIOR LITIGATION BETWEEN THE PARTIES

10.     OPTO admits that on May 31, 2019, Honeywell filed a Complaint in the District of Delaware that was assigned Civil Number 1-19-cv-01019 and that purported to set forth claims of patent infringement against OPTO (the "Delaware Action"). OPTO lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 and, therefore, denies the allegations in Paragraph 10.

11.     OPTO admits that on May 31, 2019, Honeywell filed a Complaint in the United States International Trade Commission ("ITC") that purported to set forth claims of patent infringement and requested the exclusion of certain OPTO products from importation into the United States. OPTO lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11 and, therefore, denies the allegations in Paragraph 11.

12.     OPTO admits that on June 27, 2019, the ITC issued a Notice of Institution of Investigation which was assigned Investigation Number 337-TA-1165 ("ITC Investigation"). To the extent further response is required, OPTO denies the remaining allegations of Paragraph 12.

### SETTLEMENT AND SETTLEMENT AGREEMENT

13.     This paragraph of the Complaint contains legal conclusions for which no answer is required. To the extent that an answer is required, OPTO admits that Honeywell and OPTO entered into the Agreement on January 22, 2020. OPTO lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and, therefore, denies the allegations in Paragraph 13.

14.   Admitted.

15.   OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 15.

16.    OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 16.

17.   OPTO admits that it sells or has sold the following products in the United States but denies that any of the following products are "2D Barcode Products" as defined in the Agreement: OPN-2006; NLB-1000; NLV-1001; RLB-1000; L-46R; OPH-1005; OPH-3001; OPL-6845R;  OPL-9815;  OPR-2001Z;  OPR-2001;  OPR-3201;  OPR-3201Z;  RS-2006/OPN2006; MDL-1000; MDL-1500; MDL-2001; MSL-1000; and OPR-3101.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 17.

18.   OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Opticon L-46R Laser Scanner Product Specifications; avers that the document speaks for itself; and refers the Court to the complete version of the document for an accurate description of its contents.   To the extent further response is required, Defendant denies the remaining allegations of Paragraph 18.

BREACH OF THE AGREEMENT

19.     OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 19.

20.     OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant admits that the Agreement contains an audit provision, which requires any audit to be completed within one-year of the effective date of the Agreement. To the extent any further response is required, Defendant denies the remaining allegations of Paragraph 20.

21.     OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents.  To the extent further response is required, Defendant denies the remaining allegations of Paragraph 21.

22.     This paragraph of the Complaint states a legal conclusion for which no answer is required. To the extent that an answer is required, OPTO admits that on December 16, 2020, Honeywell notified OPTO of its intention to conduct an audit. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 22.

23.     Denied.

24.     Denied.

OVERDUE ROYALTY PAYMENTS

25.     OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete

version of the Agreement for an accurate description of its contents. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 25.

26. OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 26.

27. Denied.

28. OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents. OPTO specifically denies that it owes any additional royalties to Plaintiffs. OPTO further denies that it has failed to make any required payment or made any required payment after the date in which that payment was due. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 28.

## FEES AND COSTS

29. OPTO admits that Plaintiffs purport to cite, quote, and/or characterize the Agreement; avers that the Agreement speak for itself; and refers the Court to the complete version of the Agreement for an accurate description of its contents. OPTO specifically denies that it owes any additional royalties to Plaintiffs. OPTO further denies that it has failed to make any required payment or made any required payment after the date in which that payment was due. To the extent further response is required, Defendant denies the remaining allegations of Paragraph 29.

## COUNT I – Breach of Contract

30. OPTO incorporates its responses to Paragraphs 1-29 as if fully restated herein.

31.     This paragraph of the Complaint states a legal conclusion for which no answer is required.

32.     This paragraph of the Complaint states a legal conclusion for which no answer is required.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

### JURY DEMAND

OPTO demands a trial by jury on all issues so triable.

### GENERAL DENIAL

All allegations that have not been specifically admitted are hereby denied.

### PLAINTIFF'S PRAYER FOR RELIEF

No response to Plaintiffs' Prayer for Relief from the Court is required.  OPTO expressly denies that Plaintiffs are entitled to any relief.  To the extent further response is required, OPTO denies the allegations contained in the Prayer for Relief.

*       *       *

## SEPARATE DEFENSES

OPTO hereby alleges the following separate and distinct defenses and affirmative defenses to the Complaint, and without assuming the burden of proof on matters as to which they have no such burden:

### FIRST AFFIRMATIVE DEFENSE
(Nonperformance of Condition Precedent)







## SECOND AFFIRMATIVE DEFENSE
### (Patent Misuse)

14.    OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-13 of its Affirmative Defenses.

15.    Honeywell, through this lawsuit, attempts to impermissibly broaden the physical and temporal scope of the licensed patents to include non-royalty bearing products within the immunity granted by Honeywell's express covenant not to sue, and because of its misuse of the licensed patents, Honeywell is barred from enforcing the licensed patents against, at least, OPTO and its products.

16.    At the beginning of the ITC Investigation, Honeywell asserted seven patents against two broad categories of OPTO's barcode reader products. Honeywell alleged that those seven patents were infringed by OPTO's image capturing barcode readers. Those barcode readers are essentially digital cameras that use an "image sensor" to capture and store a digital picture of the barcode. Throughout the ITC Investigation, Honeywell referred to and categorized these OPTO image sensor barcode readers as "2D Products."

17.    Honeywell further alleged that one of the seven patents, the '783 patent, was also infringed by a second category of products—OPTO's laser scanning barcode readers. Those barcode readers do not have image sensors. Instead, they scan a laser beam across the barcode and measure variations in light reflected from the barcode during the scan. Throughout the ITC Investigation, Honeywell referred to and categorized these OPTO laser scanning barcode readers as "1D Products."

18.    The OPTO products identified in Paragraph 17 of the Complaint are all OPTO laser scanning barcode readers. None of the products identified in Paragraph 17 of the Complaint are equipped with an image sensor.

19.    On November 15, 2019, Honeywell narrowed the asserted patents in the ITC Investigation to only four patents. Honeywell knowingly and voluntarily dropped the '783

patent, among others, from the ITC Investigation. In so doing, Honeywell withdrew all claims against any and all OPTO laser scanning barcode readers, such as, and including, those identified in Paragraph 17 of the Complaint.

20.     The only dispute that remained in the ITC Investigation at the time the Parties negotiated their settlement was whether OPTO's image sensor barcode readers infringed the asserted claims of the four remaining patents.

21.     As a reflection of the Parties' settlement of the remaining and narrowed dispute, OPTO agreed to pay royalties on its "2D Barcode Products," and Honeywell covenanted not to sue OPTO for OPTO's "1D Barcode Products."

22.     Under the Agreement, therefore, "2D Barcode Products" are royalty bearing products and are defined in Section 1.4 as barcode readers "operable to decode at least one or more two-dimensional barcode symbologies into human-readable text." Moreover, to preserve the structural distinction between OPTO's laser scanning barcode readers and OPTO's image sensor barcode readers, Section 1.4 clarifies that "[f]or avoidance of doubt, the term '2D Barcode Reader' shall include . . . products that include a 2D image sensor."

23.     In contrast to and consistent with Honeywell dropping the '783 patent during the ITC Investigation, Paragraph 2.4 of the Agreement memorializes Honeywell's covenant not to sue and promise not to assert any claim of patent infringement against OPTO's 1D Barcode Products, which are defined in the Agreement as barcode readers "operable to decode at least one or more 1D barcode symbologies . . . but not operable to decode a 2D barcode symbology," during the License Period.

24.     Now, through artifice and a strained interpretation of the Agreement, Honeywell is attempting to impose patent royalties on OPTO's laser scanning barcode readers through contract litigation that it could not impose through substantive litigation on the merits of the withdrawn patent.

25.     Honeywell's covenant not to sue places OPTO's laser scanning barcode readers beyond the scope of the right to exclude inherent in the licensed patents. Honeywell's demand that OPTO pay royalties on non-royalty bearing products that are expressly immunized from suit under Honeywell's covenant not to sue is an impermissible extension of the physical and temporal scope of the licensed patents and a misuse of those patents.

### THIRD AFFIRMATIVE DEFENSE
#### (Quasi-Estoppel)

26.     OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-25 of its Affirmative defenses.

27.     Honeywell is estopped from asserting that the Royalty-Bearing Products, as defined in the Agreement, include OPTO's laser scanning barcode readers, because that assertion is inconsistent with positions previously taken by Honeywell during the ITC Investigation.

28.     During the ITC Investigation, Honeywell acquiesced to the Administrative Law Judge's order to limit its case to four patents and 15 patent claims by dropping not only the '783 patent but also all claims and assertions against OPTO's laser scanning barcode readers. In so doing, Honeywell not only jettisoned a weak patent, but also simplified its case by eliminating 34 accused laser scanning barcode readers from their burden of proof.

29.     Honeywell also benefited from the impression it created that its dispute with OPTO had been narrowed to just the image sensor barcode products by inducing OPTO to come to the negotiating table under false pretenses about the scope of the negotiations. Honeywell reinforced the impression of a narrowed dispute by negotiating illusory definitions of 1D Barcode Products and 2D Barcode Products with the promise that non-image sensor equipped barcode readers would be non-royalty bearing and free from future lawsuits.

30.     It would therefore be unconscionable to allow Honeywell to maintain a post-settlement position inconsistent with its acquiescence in dropping the '783 patent, conserving

resources during the ITC Investigation, creating the impression of a narrowed dispute with OPTO, and reinforcing that impression through an Agreement that provides that OPTO's laser scanning barcode readers are non-royalty bearing products and immune from suit. Honeywell should be estopped from enforcing its strained and unfounded interpretation of the Agreement having benefited from its inconsistent positions to the harm and detriment of OPTO.

## FOURTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment/Windfall)

31. OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-30 of its Affirmative Defenses.

32. Although OPTO and Honeywell executed an integrated contract, the Agreement did not contemplate Honeywell's attempt to extract royalties through shifting and inconsistent positions on non-royalty bearing products. The Agreement likewise did not contemplate that Honeywell would misuse its patents in an attempt to extract royalties on products that fall expressly within Honeywell's covenant not to sue and are beyond the reach of its patents. The Agreement therefore does not comprehensively govern the parties' relationship and fails to provide adequate relief to OPTO.

33. OPTO's continuing payment of patent royalties on patents that have been misused and are unenforceable against OPTO would unjustly enrich Honeywell to the detriment of OPTO. Also, OPTO's prior payments to Honeywell as royalties on unenforceable patents provide an unjustifiable windfall and/or have unjustly enriched Honeywell.

## FIFTH AFFIRMATIVE DEFENSE
### (Release)

34. OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-33 of its Affirmative Defenses.

35. Honeywell's claim is barred because, pursuant to Section 2.4 of the Agreement, the Parties covenanted not to sue "for any infringement, alleged infringement or any other

violation of any patents and/or patent applications for the manufacture, sale offer to sell, lease or importation of any 1D Barcode Products." The products for which Honeywell attempts to recover allegedly unpaid royalties for are 1D Barcode Products, as defined in the Agreement. As such, Honeywell released OPTO of all liability concerning these products, including the breach of contract claim asserted in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE
### (Unilateral Mistake of Fact)

36.     OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-35 of its Affirmative Defenses.

37.     OPTO denies that the Agreement requires payment of royalties for 1D laser scanning barcode readers, including those outlined in Honeywell's Complaint.   In the alternative, at the time of contracting, OPTO did not intend for laser scanning barcode readers to be included in the definition of "2D Barcode Products."  To the extent the definition of 2D Barcode Products properly includes 1D laser scanning barcode readers, which OPTO specifically denies, Honeywell knew of this mistaken belief of fact, but nevertheless remained silent.  Due to a unilateral mistake of fact, the Agreement must be reformed to reflect the Parties' mutual understanding at the time of contract formation.

## SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

38.     OPTO restates and incorporates by reference each of the averments and allegations of Paragraphs 1-37 of its Affirmative Defenses.

39.     Honeywell's claim is barred in whole, or in part, by the doctrine of laches.

40.     Honeywell's undue delay in pursuing its alleged rights in connection with the audit ████████████████ under the Agreement and in pursuing this lawsuit overall has prejudiced OPTO in the execution of OPTO's rights under the Agreement.

## OTHER AFFIRMATIVE DEFENSES

OPTO has insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, defenses available. OPTO expressly reserves the right to assert additional defenses in the event that discovery indicates that such defenses are appropriate.

## COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Defendant and Counterclaim-Plaintiff, OPTO Electronics, Co., Ltd. ("OPTO") alleges counterclaims as set forth below against Plaintiffs and Counterclaim-Defendants Honeywell International, Inc., Hand Held Products, Inc., and Metrologic Instruments, Inc., (hereinafter collectively referred to as "Counterclaim Defendants" or "Honeywell"):

## THE PARTIES

1.　　　OPTO is a company organized and existing under the laws of Japan, having a principal place of business at 12-17 Tsukagoshi 4-chrome, Warabi-city Saitama Pref., 335-00002, Japan.

2.　　　Upon information and belief, Counterclaim Defendant Honeywell International Inc. is a Delaware corporation with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

3.　　　Upon information and belief, Counterclaim Defendant Hand Held Products, Inc. is a Delaware corporation and wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

4.　　　Upon information and belief, Counterclaim Defendant Metrologic Instruments, Inc. is a New Jersey corporation and wholly owned subsidiary of Honeywell International Inc., with its principal place of business at 855 S. Mint Street, Charlotte, North Carolina 28202.

## JURISDICTION AND VENUE

5.      These counterclaims arise under Delaware common law and North Carolina statutory law.

6.      This Court has jurisdiction based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). OPTO, on the one hand, and Honeywell, on the other, are citizens of different states, and the amount in controversy exceed $75,000, excluding interests and costs.

7.      This Court has personal jurisdiction over Honeywell because Honeywell is incorporated in and principally located in North Carolina and because the Parties to the Agreement consented to the exercise of jurisdiction of the courts in the State of North Carolina over any suit, action, or proceeding arising out of or relating to the Agreement.

8.      Venue in this District is appropriate because the Agreement between the Parties to this dispute states that any dispute arising out of the Agreement must be brought in the appropriate state or federal courts of the State of North Carolina.

9.      Venue in this District is also appropriate under 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10.      By way of general background, OPTO manufactures and sells, *inter alia*, fixed-position and handheld barcode readers. Honeywell is a competitor of OPTO and also manufactures and sells barcode readers.

11.      As discussed briefly in the foregoing paragraphs, barcode readers can generally be divided into two categories. The first category includes barcode readers that utilize a laser diode to project oscillating laser light across the width of a one-dimensional or "1D" barcode such as the one depicted below from the ISO/IEC standard:



**Figure 1 — GS1 DataBar Omnidirectional symbol representing (01)20012345678909**

12.     These 1D laser scanning barcode readers work by sensing and converting the laser light reflected from the barcode into an electronic signature. The dark vertical lines of the barcode absorb light energy and reflect less light than their neighboring and intervening blank spaces. These differences in reflected light intensities together with differences in the widths of the dark vertical lines and intervening blank spaces result in unique electronic signatures as the laser scans across the barcode. The unique electronic signatures can be decoded into human readable text.

13.     The barcode is "one-dimensional" because it is scanned or read in a single dimension—horizontally as the laser scans from left to right or from right to left. For this reason, 1D barcodes are also referred to in industry standards documents as "linear barcodes" due to the one-dimensional, side-to-side scanning method used by laser-equipped barcode readers to read and decode their data.

14.     The second category of barcode readers includes devices that use an image sensor to take a digital picture of the barcode. These barcode readers are in essence digital cameras. They have lenses that focus light reflected from the barcode onto an internal image sensor, which captures a digital image of the barcode. The image sensor is the electronic version of the chemical film used in film cameras. The barcode readers' software processes the digital image of the barcode features to decode or convert the features into human readable text—similar to optical character recognition ("OCR") of an imaged document.

15.     These image sensor barcode readers can decode 1D barcode images. The image sensor also enables these barcode readers to capture images of more complex two-dimensional or "2D" barcodes that can encode more data than a 1D barcode. The following depicts 2D "Data Matrix" barcodes from the ISO/IEC standard:

sizes from 9 x 9 to 49 x 49 (modules) not including quiet zones. These symbols can be recognised
:r right corner module being dark. The complete attributes of ECC 000 - 140 symbols are gi
ex G.

### ECC 200 requirements

#### Encode procedure overview

section provides an overview of the encoding procedure. Following sections will provide more deta
)ding example for ECC 200 is given in Annex O. The following steps convert user data to an EC
bol:

16.    The barcode features are not arranged in a one-dimensional linear direction such

as 1D barcodes. Instead, the features are mapped out within the area surrounded by the

barcode's borders such as depicted below:



Figure F.18 — Codeword placement for square mapping matrix of size 20

17.    The OPTO laser scanning barcode readers identified in Paragraph 17 of the

Complaint do not have image sensors. They are all equipped with laser diodes that enable only

the one-dimensional, side-to-side, scanning of linear barcodes. They do not read or decode

non-linear barcodes such as the Data Matrix barcodes depicted above.

UNDERLYING LITIGATION

18.     On May 31, 2019, Honeywell filed a Complaint in the District of Delaware for alleged Patent Infringement against OPTO under Civil Number 1-19-cv-01019 (the "Delaware Action").

19.     On the same day, Honeywell filed a Complaint in the United States International Trade Commission ("ITC"), purporting to set forth claims of patent infringement. The Complaint also requested the exclusion of certain OPTO products from importation into the United States.

20.     Honeywell's ITC Complaint accused certain OPTO products of infringing claims of seven patents, including United States Patent Nos. 9,465,970 ("the '970 patent"); 8,978,985 ("the '985 patent"); 7,527,206 ("the '206 patent"); 7,148,923 ("the '923 patent"); 9,659,199 ("the '199 patent"); 7,759,783 ("the '783 patent"); and 8,794,520 ("the '520 patent").

21.     On June 17, 2019, Honeywell amended their ITC Complaint by, among other things, withdrawing the '520 patent in its entirety.

22.     On June 27, 2019, the ITC issued a Notice of Institution of Investigation on the six remaining patents, which was assigned Investigation Number 337-TA-1165 ("ITC Investigation").

23.     On July 29, 2019, the Delaware Action was stayed, pending the outcome of the ITC Investigation.

24.     In their ITC Complaint, Honeywell set forth various alleged contributions of their asserted patents. According to Honeywell, "Early barcode scanners were designed only to read linear, one-dimensional (1D) barcodes. 1D barcodes use a series of lines and spaces and variable lengths to encode data. These linear barcodes can contain only a handful of characters. Accordingly, to encode longer strings of data, a 1D barcode would need to be

physically enlarged or extended, which is not suitable for all circumstances." ITC Complaint at ¶ 41.

25.     Honeywell emphasized the benefits and characteristics of 2D barcodes by stating, "As a result, various two-dimensional (2D) barcodes, which use shapes, as opposed to lines, to encode data were designed. Because data can be encoded based both on a vertical and horizontal arrangement of shapes, 2D barcodes can encode exponentially more data in the same amount of space compared to their 1D counterparts." ITC Complaint at ¶ 42.

26.     According to Honeywell, the primary contributions of their patents were improvements to the methods of exposing the "CMOS" image sensors in barcode readers designed to read 1D and 2D barcodes. Honeywell claimed that "[o]ne of [its] key innovations was the development of global-shutter technology in CMOS-based barcode scanners." ITC Complaint at ¶ 44. A "global-shutter" exposes the entire surface area of the image sensor at essentially the same moment in time. Honeywell alleged that the global-shutter was an improvement over prior art "rolling shutters" that exposed individual rows of the image sensor sequentially, thereby risking image distortion. *Id*. Honeywell asserted that its patents also contributed to improvements in exposure and illumination settings for improved image acquisition by the image sensor. *See* ITC Complaint at ¶ 45.

27.     Reflecting those alleged improvements, the claims of five of the six patents Honeywell asserted in the ITC Investigation all required the presence of an image sensor as one of the claim elements. During discovery in the ITC Investigation, Honeywell produced patent "claim charts" that identified the OPTO barcode readers accused of infringing the five patents by product name and/or number. Honeywell expressly characterized the accused products for these five patents as "2D Products." All of the OPTO products identified in the claims charts as "2D Products" are equipped with an image sensor.

28.     Only one of the patents Honeywell asserted in the ITC Investigation, the '783 patent, had claims that do not require the presence of an image sensor in the accused product. Unlike the other asserted patents, the claims of the '783 patent are not directed to methods of barcode image acquisition. Instead, the '783 patent claims are directed to editing and modifying the output information of a decoded barcode. According to Honeywell, "The '783 patent allows a user to configure the optical reader using a script interpreter program to output an edited string that may be different from the original string programmed into the barcode." ITC Complaint at ¶ 84.

29.     During discovery in the ITC Investigation, Honeywell produced a claim chart that identified the OPTO laser scanning barcode readers accused of infringing the '783 patent. The claim chart identified the accused OPTO laser scanning barcode readers by product name and/or number and included 13 of the 19 OPTO laser scanning barcode readers identified in Paragraph 17 of the Complaint in this action. All of the OPTO laser scanning barcode readers identified in Honeywell's claim chart were characterized as "1D Products."

30.     The '783 patent was the only patent asserted in the ITC Investigation by Honeywell that allegedly applied to both image sensor barcode readers and laser scanning barcode readers. Notably, the '783 patent was the only patent asserted by Honeywell that allegedly applied to OPTO's laser scanning barcode readers, which Honeywell characterized as "1D Products."

31.     On November 8, 2019, the presiding Administrative Law Judge in the ITC Investigation issued Order No. 13 which, among other things, required Honeywell to streamline the ITC Investigation by reducing the number of asserted patents to only four patents and the number of asserted patent claims to only 15 patent claims. Order No. 13 did not specify which patents or claims that Honeywell must drop but instead permitted Honeywell to

voluntarily choose the four patents and 15 patent claims that would be retained in the ITC Investigation.

32. On November 15, 2019, Honeywell responded to Order No. 13 by, *inter alia*, entirely dropping the '783 patent from the ITC Investigation. Concurrent with the withdrawal of the '783 patent from the ITC Investigation, Honeywell effectively withdrew its claims of patent infringement against all of OPTO's laser scanning barcode readers, which Honeywell characterized as "1D Products." Honeywell also effectively withdrew their demand for an exclusion order to bar importation of OPTO's laser scanning barcode readers into the United States.

33. Upon information and belief, Honeywell dropped the '783 patent and its claims against both OPTO's laser scanning barcode readers and image sensor barcode readers because Honeywell lacked confidence in the patent's validity which was contested in the ITC Investigation and/or Honeywell lacked confidence in its ability to prove infringement of the '783 patent claims.

34. After Honeywell dropped the '783 patent, only the '970 patent, the '923 patent, the '206 patent, and the '199 patent remained as asserted patents in the ITC Investigation. On or about December 2, 2019, Honeywell served expert reports that identified the OPTO products accused of infringing the four remaining patents by product name and/or number. None of the products accused by Honeywell of infringing the four remaining patents include OPTO's laser scanning barcode readers. None of the products accused by Honeywell of infringing the four remaining patents include the OPTO products identified in Paragraph 17 of the Complaint in this action.

## LICENSE AND SETTLEMENT AGREEMENT

35. After the scope of the ITC Investigation was narrowed by Honeywell to only patents and claims asserted against OPTO's image sensor barcode readers, the Parties engaged

in settlement discussions with a mediator, which resulted in the January 22, 2020 License and Settlement Agreement.

36.     Under the Agreement, "1D Barcode Products" are non-royalty bearing products and are included in Honeywell's covenant not to sue. *See* Agreement at § 2.4.

37.     According to the Agreement, "[t]he term '1D Barcode Products' shall mean any device or article or manufacture that is operable to decode at least one or more 1D barcode symbologies into human-readable text but not operable to decode a 2D barcode symbology into human-readable text (and specifically excludes 2D Barcode Products) sold by a Party." Agreement at § 1.5.

38.     Under the Agreement, "2D Barcode Products" are royalty bearing licensed products. *See* Agreement §§ 1.8, 2.1.

39.     The Agreement defines the term "2D Barcode Products" as "any device or article of manufacture that is operable to decode at least one or more two-dimensional barcode symbologies" as "defined by one or more standards setting organizations." Agreement at § 1.4.

40.     Additionally, and consistent with Honeywell's representations and descriptions of "2D Products" during the ITC Investigation, the Agreement narrows the definition of 2D Barcode Products by clarifying, "For the avoidance of doubt, the term '2D Barcode Products' *shall include* Engines and other products *that include a 2D image sensor* and are capable of outputting a 2D image that may be used to decode a 2D barcode symbology."  Agreement at § 1.4 (emphasis added).

41.     The Agreement therefore resulted in Honeywell dismissing their claims of patent infringement regarding the four remaining patents asserted in the ITC Investigation as of November 15, 2019. Those asserted patents and claims were expressly limited to OPTO's image sensor barcode readers—devices "that include a 2D image sensor."

42.     Following execution of the Agreement, OPTO timely and fully paid all patent royalties due and owing on its barcode readers "that include a 2D image sensor." On information and belief, Honeywell does not assert that OPTO has failed to timely and fully pay all patent royalties due and owing on its barcode readers "that include a 2D image sensor."

<u>THE INSTANT LITIGATION</u>

43.     On September 24, 2021, Honeywell filed the instant breach of contract action against OPTO, wrongly asserting that OPTO failed to pay royalties on the laser scanning barcode readers identified in Paragraph 17 of the Complaint. None of the barcode readers identified in Paragraph 17 of the Complaint are equipped with "a 2D image sensor."

44.     Honeywell wrongly asserts that the products identified in Paragraph 17 of the Complaint are royalty bearing "2D Barcode Products" under the Agreement because they can read and decode PDF417 barcode symbology, an example of which is depicted below:



Figure 1 — PDF417 symbol structure

45.     Honeywell wrongly asserts that because OPTO's laser scanning barcode readers can read and decode a PDF417 barcode, they are therefore "operable to decode at least one or more two-dimensional barcode symbologies." A PDF417 barcode is merely a collection of 1D linear barcodes stacked on top of each other, with each of the linear barcodes sharing the same start and stop patterns that trigger the completion of one linear barcode scan and the start of another linear barcode scan in sequence. The separate, stacked rows of 1D linear barcodes are identified by number in the following depiction of a "Compact PDF417" barcode from the ISO/IEC standard:



**Figure G.1 — Compact PDF417**

46.    The PDF417 barcode depicted above is a collection of six 1D linear barcodes. A laser scanning barcode reader essentially treats a PDF417 barcode as multiple 1D linear barcodes by scanning each row of the barcode sequentially and accumulating the data from each linear scan.

47.    As even Honeywell's' patents admit, "PDF417 uses a 'two-dimensional' scheme in which rows of characters are stacked vertically. That is, there are several rows of bar and space patterns, instead of only one row." Therefore, laser scanning barcode readers read PDF417 barcodes by merely decoding "several rows of bar and space patterns, instead of only one row."

48.    OPTO's laser scanning barcode readers are only "operable to decode" "1D barcode symbologies" as required by Section 1.5 of the Agreement. To the extent OPTO's laser scanning barcode readers are operable to decode PDF417 barcodes, that capability depends solely on the devices' ability to decode "several rows of bar and space patterns, instead of only one row." Each decoded row is merely a single linear one-dimensional barcode.

49.    Most laser scanning barcode readers are capable of reading and decoding PDF417 barcode symbology. For that reason, the Agreement includes the "for avoidance of doubt" clarification in Section 1.4 of the Agreement, which narrowed the scope of "2D Barcode Products" to devices "that include a 2D image sensor." Otherwise, there would be no meaningful difference between 1D Barcode Products and 2D Barcode Products as defined in

Agreement. OPTO properly did not pay royalties on its laser scanning 1D Barcode Products because those products are not operable to decode non-linear 2D barcodes and they do not "include a 2D image sensor."

50.     Under the terms of the Agreement therefore, OPTO's laser scanning "1D Barcode Products" are expressly included in Plaintiffs' covenant not to sue, ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████

51.     OPTO's accounting methods distinguish between its sales of its laser scanning barcode readers from those of its image sensor barcode readers, which permits OPTO to readily separate and distinguish its gross revenue derived from the two categories of products. There is no accounting convenience in computing the royalty under the Agreement based on total sales of the two product categories.

52.     The Agreement itself does not assert or require that royalties be based on gross revenue derived from total sales or that the method of computing royalties is in any way fashioned or applied for the convenience of the parties. Instead, the Agreement separately limits royalty bearing products to Licensed Products which are expressly 2D Barcode Products that "include a 2D image sensor."

## COUNT I: VIOLATION OF N.C. GEN. STAT. §75-1.1

53.     OPTO restates and incorporates by reference each of the allegations of its Answer, Paragraphs 1-40 of its Affirmative Defenses, and Paragraphs 1-52 of its Counterclaims as if fully set forth herein.

54.     By attempting to impermissibly broaden the scope of its 2D Barcode Product patents to encompass 1D Barcode Products, Honeywell is engaging in unfair methods of competition.

55.     Honeywell's "bait and switch" tactics aimed at inducing a competitor such as OPTO to enter a license agreement under false pretenses constitute an unfair and deceptive act.

56.     Honeywell's actions are in or affecting commerce.

57.     As a direct and proximate result of Honeywell's attempt to broaden the scope of its patents and their marked change in positions concerning the distinction between 2D and 1D Barcode Products, OPTO is entitled to have and recover against Honeywell its actual damages in an amount to be proven at trial, treble damages, and attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.

## COUNT II: DECLARATION OF PATENT UNENFORCEABILITY - PATENT MISUSE

58.     OPTO restates and incorporates by reference each of the allegations of its Answer, Paragraphs 1-40 of its Affirmative Defenses, and Paragraphs 1-52 of its Counterclaims as if fully set forth herein.

59.     OPTO is entitled to a declaration that the licensed patents under the Agreement are unenforceable due to Honeywell's patent misuse for the reasons set forth in Paragraphs 14-25 of OPTO's Affirmative Defenses and Paragraphs 10-52 of OPTO's Counterclaims.

60.     OPTO's entitlement to a declaration that the licensed patents under the Agreement are unenforceable is further supported and demonstrated by the anticompetitive effect and unreasonable restraint on trade resulting from that patent misuse to the benefit of Honeywell and to the detriment of consumers in the market.

61.     Upon information and belief, Honeywell entered the barcode reader market by employing its substantial corporate resources to acquire not only its co-plaintiffs in this lawsuit but also other producers of barcode reader products.

62.     Upon information and belief, in December 2007, Honeywell, then a $34 billion company, made its first entry into the broader barcode scanning industry with its $390 million purchase of Hand Held Products, Inc.[1]

63.     Upon information and belief, Honeywell subsequently expanded its footprint in the barcode reader market by acquiring Metrologic Instruments on July 2, 2008 for $720 million.[2]

64.     Upon information and belief, Honeywell sells 2D scan engines, which are a component of 2D barcode readers and are sold to third-party manufacturers to produce separately branded 2D barcode readers. As of 2013, the market for 2D scan engines in the United States had become highly concentrated. Three companies, Honeywell, Intermec, and Motorola were the three most significant market participants.

65.     Upon information and belief, Honeywell acquired Intermec on September 17,

---

[1] *See Honeywell Announces Agreement to Acquire Hand Held Products Inc. – Imaging and Mobile Innovator*, THOMAS, http://news.thomasnet.com/companystory/honeywell-announces-agreement-to-acquire-handheld-products-inc-imaging-and-mobile-innovator-534890 (last visited Jan. 5, 2022).
[2] *See Honeywell Acquires Metrologic Instruments; Expands Growing Laser, Imaging, And Enterprise Mobility*, FIELD TECHNOLOGIES ONLINE, https://www.fieldtechnologiesonline.com/doc/honeywell-acquires-metrologic-instruments-exp-0001 (last visited Jan. 5, 2022)

2013 for $600 million.[3]

66.    Upon information and belief, following Honeywell's acquisition of Intermec, Honeywell and Motorola controlled in excess of 80% of the 2D scan engine market.

67.    Upon information and belief, in addition to its market position in the 2D scan engine market, Honeywell enjoys a dominant position in the handheld 2D barcode reader market—controlling as much as one third of the market.

68.    Upon information and belief, Honeywell's misuse of the licensed patents has anticompetitive effects and results in unreasonable restraint on competition by unlawfully extending the reach of the licensed patents and obligation to pay patent royalties to OPTO's 1D laser scanning barcode readers, thereby limiting OPTO's ability to compete in an alternative market for 1D barcode readers, raising the price for consumers generally in that market, and unlawfully supporting prices in the 2D barcode reader market that Honeywell dominates by raising the prices of substitute 1D barcode readers.

69.    Upon information and belief, Honeywell's misuse of the licensed patents by imposing royalties on OPTO's 1D laser scanning barcode readers that are immune from royalties and suit under the covenant not to sue has the effect of restraining competition without justification, not only in the 1D barcode market, but also in the 2D barcode market to the extent that 1D laser scanning barcode readers compete with 2D image sensor barcode readers for operability to decode PDF417 barcodes.

## COUNT III: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

70.    OPTO restates and incorporates by reference each of the allegations of its Answer, Paragraphs 1-40 of its Affirmative Defenses, and Paragraphs 1-52 of its Counterclaims as if fully set forth herein.

---

[3] *See Honeywell Completes Acquisition of Intermec*, PR NEWSWIRE, https://www.prnewswire.com/news-releases/honeywell-completes-acquisition-of-intermec-224054021 html (last visited Jan. 5, 2022).

71. The Parties negotiated the Agreement with an apparent scope and purpose that 1D Barcode Products would be ██████████████████████████████████ ██████████ non-royalty bearing products. Consistent with Honeywell's identification of OPTO's laser scanning barcode readers as "1D Products" during the ITC Investigation and Honeywell's dropping of all claims against OPTO's "1D Products" prior to the Parties' settlement of the ITC Investigation, the justifiable impression created of the Agreement's scope and purpose is that OPTO's laser scanning barcode readers qualify as 1D Barcode Products under the definition set forth in the Agreement. Indeed, Honeywell negotiated definitions of 1D Barcode Products and 2D Barcode Products that conveyed the reasonable and justifiable impression that OPTO's laser scanning barcode readers fall outside the scope of the Agreement's royalty and other payment provisions.

72. After OPTO executed the Agreement based upon the impression created by Honeywell's conduct and the objectively apparent scope and purpose of the Agreement, Honeywell sued OPTO, alleging that OPTO's laser scanning barcode readers are 2D Barcode Products pursuant to the definition of that term in the Agreement and further alleging that OPTO owes past due royalties, late fees, and attorneys' fees.

73. Honeywell's oppressive conduct seeks to deprive OPTO of the benefit of the bargain for which it negotiated. Namely, Honeywell seeks additional compensation for products the Parties never contemplated as being covered by the Agreement's royalty and other payment provisions.

74. In asserting its strained interpretation of the Agreement's 2D Barcode Products definition, Honeywell breached its implicit duty to perform and enforce the Agreement in good faith and to deal fairly with OPTO. Honeywell's attempted enforcement of the Agreement's royalty and other payment provisions against OPTO's laser scanning barcode

readers displays an unwarranted lack of faithfulness to the agreed common purpose of the Agreement and conduct inconsistent with the justified expectations of OPTO.

75.     As a direct and proximate result of Honeywell's breach of its implicit duty of good faith and fair dealing OPTO has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, OPTO prays that the Court enter judgment in its favor and against Honeywell as follows:

1.     That Honeywell takes nothing by way of its Complaint and the claims asserted therein;

2.     That the Complaint, and the claims against OPTO, be dismissed with prejudice;

3.     That OPTO is awarded damages in an amount to be proven at trial;

4.     For a declaration that the licensed patents under the Agreement are unenforceable due to patent misuse;

5.     That Honeywell has been unjustly enriched by all prior payments made by OPTO under the Agreement due to Honeywell's patent misuse, breach of the implied covenant of good faith and fair dealing, and/or unfair methods of competition.

6.     That Honeywell refunds to OPTO all prior payments made by OPTO under the Agreement;

7.     For a declaration that OPTO has no continuing obligation under the Agreement for payment of royalties due to patent misuse;

8.     That OPTO be awarded treble damages and attorney's fees pursuant to N.C. GEN. STAT. § 75-16, or any other applicable statute or rule of law;

9.     That OPTO be awarded further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, OPTO requests a trial by jury on any issues so triable by right.

This is the 20th day of January 2022.

MCGUIREWOODS LLP

/s/ Robert A. Muckenfuss
Robert A. Muckenfuss
North Carolina Bar No. 28218
Zachary L. McCamey
North Carolina Bar No. 53540
201 North Tryon Street, Suite 3000
Charlotte, NC 28202-2146
Telephone: (704) 343-2244
Facsimile: (704) 353-6160
rmuckenfus@mcguirewoods.com
zmccamey@mcguirewoods.com

*Attorneys for Defendant OPTO Electronics Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this **20ᵗʰ day of January 2022**, the foregoing **ANSWER,**

**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** was filed with the Court using the CM/ECF

system which will automatically serve all attorneys of record via the Courts CM/ECF System to the

following:

Brandon C.E. Springer
Lauren Nichole Griffin
Matthew Scott Stevens
Michael R Hoernlein
S. Benjamin Pleune
Stephen Richard Lareau
Mark Timothy Calloway
Alston & Bird, LLP
brandon.springer@alston.com
lauren.griffin@alston.com
scott.stevens@alston.com
michael.hoernlein@alston.com
ben.pleune@alston.com
stephen.lareau@alston.com
mark.calloway@alston.com

/s/ Robert A. Muckenfuss
Robert A. Muckenfuss