# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:21-cv-506

HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC.,

*Plaintiffs and Counterclaim Defendants,*

v.

OPTO ELECTRONICS CO., LTD.,

*Defendant and Counterclaim Plaintiff.*

**HONEYWELL'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OPTO'S COUNTERCLAIMS**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

STANDARD OF REVIEW ...................................................................................5

ARGUMENT ........................................................................................................5

    I.    THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S UDTPA CLAIM...................................................................5

    II.    THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S PATENT-MISUSE CLAIM..................................................10

    III.    THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.................13

CONCLUSION ....................................................................................................16

Case 3:21-cv-00506-KDB-DCK   Document 23   Filed 02/04/22   Page 2 of 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................5, 7, 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 554 (2007)..................................................................5, 7

*Bicycle Transit Auth., Inc. v. Bell*,
  333 S.E.2d 299 (N.C. 1985).............................................................13

*BioSignia, Inc. v. Life Line Screening of Am., Ltd.*,
  No. 12-CV-1129, 2014 U.S. Dist. LEXIS 89678 (M.D.N.C. June 30,
  2014) ...............................................................................15

*Brinkman v. Barrett Kays & Assocs., P.A.*,
  575 S.E.2d 40 (N.C. Ct. App. 2003)......................................................6

*BSN Med., Inc. v. Parker Med. Assocs. LLC*,
  No. 09-cv-15, 2011 U.S. Dist. LEXIS 130643 (W.D.N.C. Nov. 9, 2011)...........8

*C.R. Bard, Inc. v. M3 Systems, Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) ....................................................10, 12

*Ditch Witch of Charlotte, Inc. v. Bandit Indus.*,
  No. 15-cv-181, 2017 U.S. Dist. LEXIS 11580 (W.D.N.C. Jan. 27, 2017) 6, 8, 14

*East Town Mkt., L.P. v. 550 Foods, LLC*,
  776 S.E.2d 364 (N.C. Ct. App. 2015)....................................................14

*Giarratano v. Johnson*,
  521 F.3d 298 (4th Cir. 2008) .............................................................5

*Hajmm Co. v. House of Raeford Farms, Inc.*,
  403 S.E.2d 483 (N.C. 1991)...............................................................9

*In re Brokers, Inc.*,
  396 B.R. 146 (Bankr. M.D.N.C. 2008)......................................................6

*KJ Appliance Ctr., LLC v. BSH Home Appliances Corp.*,
    No. 19-cv-795-RMG, 2020 U.S. Dist. LEXIS 135476 (D.S.C. July 29,
    2020) ................................................................................................................15

*LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*,
    No. 4:13-cv-94-D, 2014 U.S. Dist. LEXIS 154909 (E.D.N.C. Oct. 31,
    2014) ..................................................................................................................8

*Mallinckrodt, Inc. v. Medipart, Inc.*,
    976 F.2d 700 (Fed. Cir. 1992) .........................................................................10

*PCS Phosphate Co. v. Norfolk S. Corp.*,
    559 F.3d 212 (4th Cir. 2009) .........................................................................2, 9

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010) ..................................................................11, 12

*Shriners Hosps. for Children v. Paul F.M. Shaver, III, Profit Sharing Plan*,
    No. 20-CV-10-FL, 2021 U.S. Dist. LEXIS 30144 (E.D.N.C. Feb. 18,
    2021) ..................................................................................................................9

*Spitzer-Tremblay v. Wells Fargo Bank, N.A.*,
    793 S.E.2d 281 (N.C. Ct. App. 2016) .............................................................15

*Suntrust Bank v. Bryant/Sutphin Props., LLC*,
    732 S.E.2d 594 (N.C. Ct. App. 2012) .............................................................15

*Topshelf Mgmt. v. Campbell-Ewald Co.*,
    117 F. Supp. 3d 722 (M.D.N.C. 2015) ..........................................................7, 8

*U.S. Philips Corp. v. ITC*,
    424 F.3d 1179 (Fed. Cir. 2005) .......................................................................11

*Va. Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) .........................................................................11

*Wag More Dogs, LLC v. Cozart*,
    680 F.3d 359 (4th Cir. 2012) .............................................................................5

*Walker v. Branch Banking & Tr. Co.*,
    515 S.E.2d 727 (N.C. Ct. App. 1999).................................................................6

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
    395 U.S. 100 (1969)............................................................................................10

**RULES**

Federal Rule of Civil Procedure 9(b).........................................................................7

Federal Rule of Civil Procedure 12(b)(6) ..................................................................4

**STATUTES**

N.C. Gen. Stat. § 75-1.1 ........................................................................................4, 9

# INTRODUCTION

This is a straightforward contract dispute that boils down to a simple question: Does the License and Settlement Agreement's definition of royalty-bearing "2D Barcode Products" encompass OPTO's so-called "laser scanning barcode readers"? Honeywell[1] says yes. *See* Dkt. No. 1, ¶¶ 16–18, 23 (hereinafter, "Compl."). OPTO[2] says no. *See* Dkt. No. 17, ¶¶ 16–18, 23.

Honeywell and OPTO—sophisticated parties with sophisticated counsel— entered into the License and Settlement Agreement over two years ago, resolving patent-infringement claims that Honeywell brought against OPTO. As part of that Agreement, OPTO promised to pay Honeywell royalties on certain "2D Barcode Products." Because Honeywell was suspicious that OPTO was not including *all* of its relevant sales in its royalty payments, Honeywell included in the Agreement and ultimately invoked an audit provision that was specifically designed to prevent any duplicitous behavior. Upon learning through the audit process that OPTO had failed to pay the full amount of the contracted royalties, and after several attempts to resolve these issues without litigation, Honeywell filed this lawsuit.

---

[1]  Honeywell International Inc., Hand Held Products, Inc., and Metrologic Instruments, Inc. are referred to collectively as "Honeywell."

[2]  OPTO Electronics Co., Ltd. ("OPTO").

Honeywell's breach-of-contract claim is on solid footing; that's why OPTO didn't file a motion to dismiss it. But instead of simply presenting its answer and affirmative defenses and otherwise attempting to explain the non-payment that the audit revealed, OPTO is attempting to muddy the waters by lodging counterclaims against Honeywell for alleged tortious conduct. But those claims have no merit. They rest on one simple fact that OPTO just doesn't like: OPTO got caught misrepresenting its past sales and withholding payments owed to Honeywell. OPTO is trying to recast this contract dispute in a way that no court has ever done—arguing that filing a lawsuit based on a contract's plain language can amount to an unfair and deceptive trade practice or a breach of implied covenant of good faith and fair dealing. In fact, "North Carolina law forbids this." *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) (affirming dismissal of UDTPA claim that was "simply an attempt to multiply the damages for an ordinary breach of an agreement"). But OPTO doesn't stop there: OPTO is trying to convert a mere disagreement about the meaning of a settlement agreement into a claim for patent misuse.

The Court should dismiss the Counterclaims in their entirety.

## BACKGROUND

On September 24, 2021, Honeywell filed this action against OPTO. *See* Compl. The crux of Honeywell's Complaint is that OPTO owes Honeywell

additional payments under ███████████████████████████ (the
"Agreement") because OPTO materially under-reported ████████████ "2D
Barcode Products." *Id*. ¶ 23. OPTO is in breach of the Agreement based on its refusal
to pay and because it has failed to properly account for its sales of "2D Barcode
Products." *Id*. ¶ 24.

The Agreement arose out of complaints for patent infringement that
Honeywell filed on May 31, 2019 against OPTO in both the District of Delaware
and the International Trade Commission. Dkt. No. 17, ¶¶ 18, 19 (hereinafter,
"Counterclaims"). On January 22, 2020, Honeywell and OPTO entered into the
Agreement to resolve the two actions. *Id*. ¶ 35. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████ The Agreement also
included specific safeguards so that Honeywell had a full and fair opportunity to
confirm whether OPTO's representations regarding its revenues were false. *First*,

████████████████████████████████████████████

████████████████████████████████████ *Id. Second*, Honeywell

was given the right to audit that Revenue ██████████████████████

███████████████ *Id.* ████████████████████████████████████

████████ Honeywell learned that OPTO had not included all of its "2D Barcode Products" in its revenue calculations. Compl., ¶¶ 23, 24. Honeywell filed the current action to cure OPTO's non-payment and breach.

OPTO filed its Answer, Affirmative Defenses, and Counterclaims to the Complaint on January 5, 2022, asserting claims for violation of N.C. Gen. Stat. §75-1.1 (the "UDTPA"), declaration of patent unenforceability for patent misuse, and breach of implied covenant of good faith and fair dealing. *See* Dkt. No. 17. OPTO alleges[3] that it "timely and fully paid all patent royalties due and owing on its barcode readers 'that include a 2D image sensor'" (Counterclaims, ¶ 42) and that Honeywell's claim "wrongly asserts" that certain identified products are "royalty bearing '2D Barcode Products' under the Agreement." *Id.* ¶ 44.

Honeywell now brings this Motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Counterclaims for failure to state a claim upon which relief may be granted.

---

[3] Honeywell disputes many of OPTO's factual allegations but takes them as true for purposes of this Motion only.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Although a court must accept the factual allegations of a complaint as true, a court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## ARGUMENT

## I. THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S UDTPA CLAIM.

After 52 paragraphs of detailed descriptions of barcode readers, prior litigation, the negotiated language of the Agreement reached by the parties (crafted with the aid of experienced lawyers and a highly regarded mediator), and the parties' disagreements over interpreting that language, OPTO goes for broke in Count I by asserting a UDTPA claim. Why? For the same reason most litigants do: To leverage the prospect of treble damages in a straightforward contract dispute. The Court should reject OPTO's tactic.

"The elements of an Unfair and Deceptive Trade Practices Act claim are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.'" *Brinkman v. Barrett Kays & Assocs., P.A.*, 575 S.E.2d 40, 44 (N.C. Ct. App. 2003) (internal citation omitted). OPTO fails to plausibly allege any of those elements and attempts to transform a straightforward breach-of-contract case into an unfair trade practice. *Ditch Witch of Charlotte, Inc. v. Bandit Indus.*, 2017 U.S. Dist. LEXIS 11580, at *12 (W.D.N.C. Jan. 27, 2017) ("The exercise of contractual rights is not an unfair trade practice under the North Carolina statute.").

*First*, OPTO does not plausibly allege an "unfair or deceptive act or practice" or "an unfair method of competition." "Whether the acts in question constitute an unfair and deceptive practice in or affecting commerce is a matter of law." *In re Brokers, Inc.*, 396 B.R. 146, 162 (Bankr. M.D.N.C. 2008). "A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Branch Banking & Tr. Co.*, 515 S.E.2d 727, 729 (N.C. Ct. App. 1999) (internal citation omitted). OPTO purports to identify two actions it alleges amount to unfair competition: (1) Honeywell's "attempt[] to impermissibly broaden the scope of its 2D Barcode Product patents" (Counterclaims, ¶ 54), and (2) Honeywell's "'bait and switch' tactics" to "induc[e] a competitor such as OPTO to enter a license agreement under

false pretenses." *Id.* ¶ 55. In other words, OPTO claims that Honeywell engaged in unfair or deceptive conduct by either (1) entering into the Agreement or (2) bringing this suit to enforce the terms of the Agreement. Neither theory holds water.

At the threshold, OPTO offers only "conclusory" allegations. *See Iqbal*, 556 U.S. at 678. OPTO fails to identify how Honeywell "impermissibly broaden[s]" the scope of the patents at issue, what Honeywell's so-called "bait and switch" was, what "false pretenses" OPTO relied on, or how Honeywell "induc[ed]" OPTO to enter into the Agreement. In short, OPTO offers buzzwords, not facts. But "labels and conclusions" are never enough. *Twombly*, 550 U.S. at 555.

OPTO's claim that Honeywell used (undefined) "bait and switch" tactics to induce OPTO to enter into the Agreement "under false pretenses" also fails the plausibility test. *See Iqbal*, 556 U.S. at 678. OPTO admits that the Agreement followed several months of patent litigation and a mediation. Counterclaims, ¶ 35. It strains credulity to believe that Honeywell duped OPTO into entering into the Agreement—a settlement hashed out (with the aid of a mediator) by two groups of sophisticated lawyers representing sophisticated, adverse companies. What's more, UDTPA claims premised on allegations of "false pretenses" are subject to Federal Rule of Civil Procedure 9(b)'s heightened scrutiny. *See Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (holding that Rule 9(b) applies to UDTPA claims "alleging detrimental reliance on false or deceptive

7

representations"). "To meet this standard, the plaintiff must sufficiently describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* at 725. OPTO doesn't even begin to meet those requirements.

And OPTO's claim that Honeywell's bringing this lawsuit constitutes "unfair methods of competition" fares no better. A "fundamental disagreement between the parties about a contract's terms" is not a "substantial aggravating circumstance" that could elevate a routine contract dispute to an unfair and deceptive act (*LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, No. 4:13-cv-94-D, 2014 U.S. Dist. LEXIS 154909, at *8 (E.D.N.C. Oct. 31, 2014))—even more so when OPTO doesn't point to a single provision of the Agreement that it claims Honeywell has breached. *See Ditch Witch of Charlotte, Inc. v. Bandit Indus.*, No. 15-cv-181, 2017 U.S. Dist. LEXIS 11580, at *12 (W.D.N.C. Jan. 27, 2017) ("The exercise of contractual rights is not an unfair trade practice under the North Carolina statute.").

To the extent filing a lawsuit could ever constitute an unfair or deceptive trade practice, a plaintiff would have to allege (at the very least) that the lawsuit was filed "*solely* to interfere with defendant['s] business relationships." *BSN Med., Inc. v. Parker Med. Assocs. LLC*, No. 09-cv-15, 2011 U.S. Dist. LEXIS 130643, at *99–100 (W.D.N.C. Nov. 9, 2011) (emphasis original). Put another way, a lawsuit could potentially be an unfair or deceptive act only if "no reasonable litigant could

realistically expect success on the merits." *Id.* at 100. OPTO doesn't allege that Honeywell's claims fall into this category. If OPTO believed as much, it would have moved to dismiss them. In short, OPTO is grasping at straws in "an attempt to multiply the damages" at stake to gain leverage in an ordinary contract dispute. *See PCS Phosphate Co.*, 559 F.3d at 225.

*Second,* OPTO fails to plausibly allege that Honeywell's conduct is in or affecting commerce. Under UDTPA, "commerce" is limited to "business activities." N.C. Gen. Stat. § 75-1.1(b). "For purposes of the UDTPA, the term 'business activities' connotes 'the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized,' and it has been construed in light of the statute's ultimate goal, to benefit consumers." *Shriners Hosps. for Children v. Paul F.M. Shaver, III, Profit Sharing Plan*, No. 20-CV-10-FL, 2021 U.S. Dist. LEXIS 30144, at *14-15 (E.D.N.C. Feb. 18, 2021) (quoting *Hajmm Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483 (N.C. 1991)). OPTO doesn't allege any facts supporting its conclusion that Honeywell's actions affect commerce. *See* Counterclaims, ¶ 56. And a dispute between "two sophisticated business entities" is "wholly divorced from the context of consumer transactions" that UDTPA was intended to protect. *PCS Phosphate Co.*, 559 F.3d at 225.

*Third*, OPTO fails to identify any resulting harm from Honeywell's alleged conduct. Aside from (even more) conclusory allegations of harm, OPTO does not point to any impact that Honeywell's purported conduct has had on OPTO—financial or otherwise. That is not enough.

The Court should dismiss OPTO's UDTPA claim with prejudice.

## II. THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S PATENT-MISUSE CLAIM.

Patent misuse is an affirmative defense to patent infringement that "arose to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992). As the U.S. Supreme Court has explained, the doctrine of patent misuse bars a patentee from using the "patent's leverage" to "extend the monopoly of his patent to derive a benefit not attributable to the use of the patent's teachings." *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 135-36 (1969).

The key inquiry for patent misuse is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect. *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). The Federal Circuit has continuously emphasized that the defense of patent misuse is a narrow doctrine that applies in limited circumstances and "is not available to a presumptive infringer simply

because a patentee engages in some kind of wrongful commercial conduct, even conduct that may have anticompetitive effects." *Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010).

The hallmark case of patent misuse is "tying arrangements." *See U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1185 (Fed. Cir. 2005) ("certain specific practices have been identified as constituting per se patent misuse, 'including so-called "tying" arrangements.'"). "Tying arrangements" occur when a "patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *U.S. Philips Corp.*, 424 F.3d at 1185.

When an alleged practice is not *per se* patent misuse, the practice may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). In such circumstances, the rule of reason applies. *U.S. Philips Corp.*, 424 F.3d at 1185. "Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Va. Panel Corp.*, 133 F.3d at 869.

Accordingly, to plead patent misuse a defendant must show that (1) a patentee has impermissibly broadened the scope of a patent grant; and (2) such broadening has an anticompetitive effect. *See C.R. Bard, Inc.*, 157 F.3d at 1372. OPTO does not plead either.

*First*, OPTO must show that Honeywell broadened the scope of the patent. But OPTO does not allege a "tying arrangement," and it does not allege facts showing that the Agreement or this lawsuit extend the scope of licensed patents. Indeed, OPTO does not plead a single fact supporting a claim that Honeywell is extending the "physical or temporal scope" of any licensed patents. *Princo Corp*, 616 F.3d at 1328 (characterizing patent misuse as "the patentee's act of impermissibly broaden[ing] the 'physical or temporal scope' of the patent.") (citation omitted).

*Second*, OPTO must show that such broadening has an anti-competitive effect. OPTO similarly fails to plausibly allege an anti-competitive effect resulting from an impermissible broadening of patent rights. Indeed, OPTO fails to show any cognizable injury. Rather, OPTO merely states, "[u]pon information and belief," that "Honeywell's misuse of the licensed patents has anticompetitive effects and results in unreasonable restraint on competition." Counterclaims, ¶ 68. But OPTO fails to point to any concrete injury to OPTO or the relevant market. Indeed, OPTO's allegations are nothing more than threadbare recitals. *See Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, OPTO's claims for patent misuse must be dismissed.

## III. THE COURT SHOULD DISMISS WITH PREJUDICE OPTO'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

OPTO does not claim that Honeywell breached any express term of the Agreement. Instead, OPTO asserts a nebulous claim for breach of the implied covenant of good faith and fair dealing—based solely on Honeywell's bringing this lawsuit. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985). OPTO's claim that Honeywell breached its implied duties by filing this lawsuit (*see* Counterclaims, ¶¶ 71–74) shouldn't even get out of the gate, for at least two reasons.

*First*, OPTO fails to allege any breach—express or implied. OPTO's allegations in this count make it clear that OPTO simply disagrees with Honeywell's interpretation of the Agreement's definition of "2D Barcode Products"—or disagrees with the language of the Agreement itself. *See* Counterclaims, ¶ 71 ("Honeywell negotiated definitions of 1D Barcode Products and 2D Barcode Products that conveyed the reasonable and justifiable impression that OPTO's laser

13

scanning barcode readers fall outside the scope of the Agreement's royalty and other payment provisions."); *id.* ¶ 72 ("Honeywell sued OPTO, alleging that OPTO's laser scanning barcode readers are 2D Barcode Products pursuant to the definition of that term in the Agreement . . . ."); *id.* ¶ 74 ("In asserting its strained interpretation of the Agreement's 2D Barcode Products definition, Honeywell breached its implicit duty . . . .").

The Court need not decide which interpretation is correct today because OPTO fails to allege that Honeywell's interpretation of the Agreement (right or wrong) has led OPTO to *breach* any express or implied term of the Agreement.[4] The only conduct OPTO points to is Honeywell's filing of this lawsuit to protect its rights under the terms of the Agreement. But "merely [] exercising [one's] contractual rights" does not violate the implied covenant of good faith and fair dealing. *East Town Mkt., L.P. v. 550 Foods, LLC*, 776 S.E.2d 364 (N.C. Ct. App. 2015) (table case); *see also Ditch Witch of Charlotte, Inc.*, 2017 U.S. Dist. LEXIS 11580, at *13 ("Bandit's exercise of its right to terminate under the Agreement cannot form the basis of a claim for breach of an implied covenant of good faith and fair dealing.").

---

[4] In stark contrast, Honeywell's breach of contract claim alleges that OPTO misrepresented its ███████ revenue and improperly withheld royalty payments based on its faulty interpretation of the definition of "2D Barcode Products" under the Agreement. *See, e.g.*, Compl., ¶¶ 33, 36.

14

*Second*, OPTO attempts to use its breach claim to supplant the plain language of the Agreement. "Because the covenant of good faith and fair dealing is an implied term, it cannot be used to contradict the express terms of a contract." *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 12-CV-1129, 2014 U.S. Dist. LEXIS 89678 (M.D.N.C. June 30, 2014). Absent a claim for "any underlying breach" of the Agreement itself, OPTO cannot sustain its claim for breach of the implied covenant. *See KJ Appliance Ctr., LLC v. BSH Home Appliances Corp.*, No. 19-cv-795-RMG, 2020 U.S. Dist. LEXIS 135476, at *11–12 (D.S.C. July 29, 2020) (applying North Carolina law). "[I]f there is not any allegation of breach of contract, then 'it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts.'" *Spitzer-Tremblay v. Wells Fargo Bank, N.A.*, 793 S.E.2d 281 (N.C. Ct. App. 2016) (table case) (quoting *Suntrust Bank v. Bryant/Sutphin Props., LLC*, 732 S.E.2d 594, 603 (N.C. Ct. App. 2012)). When, as here, the plain language of the Agreement entitles Honeywell to royalties for OPTO's sales of 2D Barcode Products, OPTO cannot amend the contracted terms through a quasi-contract claim just because it disagrees with Honeywell's interpretation of the meaning of "2D Barcode Products" and Honeywell's decision to enforce the Agreement through this lawsuit.

The Court should dismiss with prejudice OPTO's claim for breach of the implied covenant of good faith and fair dealing.

15

## **CONCLUSION**

The Court should dismiss the Counterclaims with prejudice.

Submitted February 4, 2022.

/s/ *S. Benjamin Pleune*
S. Benjamin Pleune (NC Bar No. 28748)
M. Scott Stevens (NC Bar No. 37828)
Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Stephen R. Lareau (NC Bar No. 42992)
Brandon Springer (NC Bar No. 54523)
Lauren N. Griffin (NC Bar No. 54766)
**ALSTON & BIRD LLP**
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280
Telephone: (704) 444-1000
Facsimile: (704) 444-1935

*Counsel for Plaintiffs and Counterclaim*
*Defendants*
*Honeywell International Inc.,*
*Hand Held Products, Inc., and*
*Metrologic Instruments, Inc.*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2022, I filed and served a copy of this Memorandum in Support of Motion to Dismiss using the CM/ECF system on all counsel of record.

/s/ *S. Benjamin Pleune*

S. Benjamin Pleune
N.C. Bar No. 28748
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
ben.pleune@alston.com

*Counsel for Plaintiffs and Counterclaim*
*Defendants*
*Honeywell International Inc.,*
*Hand Held Products, Inc., and*
*Metrologic Instruments, Inc.*

17