IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21CV506

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC., ) <br> HAND HELD PRODUCTS, INC., and ) <br> METROLOGIC INSTRUMENTS, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> OPTICON ELECTRONICS CO., LTD., ) <br> ) <br> Defendant. ) <br> _____) | ORDER |

This matter is before the Court upon Plaintiffs' Motion to Dismiss Defendant's Counterclaims. A hearing was held in this matter on April 11, 2022.

### I.   FACTUAL BACKGROUND

Honeywell International, Inc. ("Honeywell") and Opto Electronics Co., Ltd ("Opticon") are competitors in the manufacture and sale of barcode readers. On May 31, 2019, Honeywell filed complaints for patent infringement against Opticon. (Compl. ¶10). Honeywell and Opticon subsequently entered into a License and Settlement Agreement (the "Agreement") which resolved the dispute. *Id*. at ¶13. Under the Agreement, Opticon received a license to Honeywell's "U.S. Patent Portfolio." (Agreement, Doc. No. 1-1, § 2.1). In exchange for the license, Opticon was required to make ongoing payments of a specified percentage of Opticon's gross revenue derived from the sales of "2D Barcode Products" in the United States. *Id*. at § 4.

Under the Agreement, Opticon represented and warranted the amount of its Gross Revenue of "2D Barcode Products." *Id*. at § 5.1. Opticon agreed to make an additional payment if it was determined that it under-reported its Gross Revenue. *Id*. The Agreement also contains

1

certain audit provisions allowing Honeywell to verify the accuracy of Opticon's representations regarding its revenues. (Compl. ¶ 20). After invoking the audit provision, Honeywell learned that Opticon's revenues from sales of 2D Barcode Products were tens of millions of dollars more than Opticon represented in the Agreement, in part because Opticon had excluded certain 2D Barcode Products from its calculations. *Id*. at ¶¶ 22, 23.

Honeywell filed the current action against Opticon alleging breach of contract. Opticon filed its Answer, Affirmative Defenses, and Counterclaims to the Complaint, asserting claims for unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1 (the "UDTPA"), declaration of patent unenforceability for patent misuse, and breach of implied covenant of good faith and fair dealing. *See* Doc. No. 17. OPTICON alleges that it "timely and fully paid all patent royalties due and owing on its barcode readers 'that include a 2D image sensor'" (Counterclaims, ¶ 42) and that Honeywell's claim "wrongly asserts" that certain identified products are "royalty bearing '2D Barcode Products' under the Agreement." *Id*. at ¶ 44.

The crux of the dispute between the Parties focuses on their disagreement as to what constitutes royalty bearing 2D Barcode Products. Honeywell's position is that certain of Opticon's laser scanning barcode products are included. Opticon contends that they are not. In its Counterclaim, Opticon alleges that Honeywell intentionally and objectively through its conduct led Opticon to believe the royalty payment terms of the Agreement Honeywell seeks to enforce applied only to Opticon's 2D image sensor barcode products, and not to Opticon's 1D laser scanning barcode products. *See* Doc. No. 14, ¶¶ 21-34.

Honeywell now moves to dismiss Opticon's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 558 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although a court must accept the factual allegations of a complaint as true, a court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

### B. UDTPA Claim

To state a claim pursuant to the UDTPA, a plaintiff must allege (1) an unfair or deceptive act or practice; (2) in or affecting commerce; (3) which proximately caused actual injury to claimant. *Walker v. Fleetwood Homes of N.C., Inc*., 653 S.E.2d 393, 399 (N.C. 2007). A deceptive trade practice "is one that possesses the tendency or capacity to mislead, or creates the likelihood of deception." *Noble v. Hooters of Greenville (NC), LLC,* 681 S.E.2d 448, 452 (N.C. Ct. App. 2009). "A practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Branch Banking & Tr. Co*., 515 S.E.2d 727, 729 (N.C. Ct. App. 1999) (internal citation omitted). Whether conduct is unfair or deceptive is a question of law for the court. *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000). To establish an UDTPA claim, Opticon must show "[s]ome type of *egregious or aggravating* circumstances." *Phelps Staffing, LLC v. C.T. Phelps, Inc*., 740 S.E.2d 923, 928 (N.C. Ct. App. 2013) (emphasis in original).

A "fundamental disagreement between the parties about a contract's terms" is not a "substantial aggravating circumstance" that could elevate a routine contract dispute to an unfair and deceptive act. *LRP Hotels of Carolina, LLC v. Westfield Ins. Co.*, No. 4:13-cv-94-D, 2014 WL 5581049, * 3 (E.D.N.C. Oct. 31, 2014); s*ee also Ditch Witch of Charlotte, Inc. v. Bandit Indus.*, No. 15-cv-181, 2017 WL 390290, at *4 (W.D.N.C. Jan. 27, 2017) ("The exercise of contractual rights is not an unfair trade practice under the North Carolina statute."). This is a contract dispute involving a disagreement as to the meaning of words in a settlement agreement. The Court rejects Opticon's attempt to transform it into a UDTPA claim.

**C. Patent Misuse Claim**

The doctrine of patent misuse bars a patentee from using the "patent's leverage" to "extend the monopoly of his patent to derive a benefit not attributable to the use of the patent's teachings." *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 135-36 (1969). The key inquiry for patent misuse "is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Accordingly, to plead patent misuse a defendant must show that (1) a patentee has impermissibly broadened the scope of a patent grant; and (2) such broadening has an anticompetitive effect. *See id.*

Certain specific practices have been identified by the Federal Circuit as constituting "per se patent misuse," such as "tying arrangements." [1] *See U.S. Philips Corp. v. ITC*, 424 F.3d 1179, 1185 (Fed. Cir. 2005). Opticon does not make any allegations of per se patent misuse herein.

---

[1] "'[T]ying' arrangements [are a practice] in which a patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1185 (Fed. Cir. 2005)

4

When an alleged practice is not per se patent misuse, the practice may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). In such circumstances, the rule of reason applies, wherein "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id*. Such a fact-specific analysis is inappropriate at this stage of the litigation and the Court will allow this issue, whether considered a counterclaim or affirmative defense, to go forward at this time.

### D. Breach of Covenant of Good Faith and Fair Dealing

Opticon asserts, and Honeywell does not dispute, that Delaware law governs this claim.[2] The Court of Chancery of Delaware described the implied covenant of good faith and fair dealing as follows:

> The implied covenant of good faith and fair dealing inheres in every contract and "requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." The implied covenant cannot be invoked to override the express terms of the contract. Moreover, rather than constituting a freefloating duty imposed on a contracting party, the implied covenant can only be used conservatively "to ensure the parties' 'reasonable expectations' are fulfilled." Thus, to state a claim for breach of the implied covenant, [plaintiff] "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." General allegations of bad faith conduct are not sufficient. Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.

---

[2] Honeywell argues that the claim fails under either Delaware or North Carolina law.

5

*Kuroda v. SPJS Holdings, L.L.C*., 971 A.2d 872, 888 (Del. Ch. 2009) (citations omitted). At this early stage of the litigation, the Court is reluctant to dismiss this claim, and finds that it has been plausibly alleged.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Dismiss Defendant's Counterclaims is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion to Dismiss Defendant's Counterclaim for Unfair and Deceptive Trade Practices is hereby **GRANTED**, and the Motion to Dismiss Defendant's Patent Misuse and Breach of Duty of Good Faith and Fair Dealing claims is hereby **DENIED**.

Signed: April 14, 2022

Graham C. Mullen
United States District Judge