**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:21-cv-00506 |
| v. | ) ) | JURY TRIAL DEMANDED |
| OPTO ELECTRONICS CO., LTD., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>DAUBERT MOTION TO EXCLUDE TESTIMONY OF DAVID O. TAYLOR</u>**

Defendant OPTO Electronics Co., Ltd. ("OPTO") submits this Reply in support of its Daubert Motion to Exclude Testimony of David O. Taylor. For all the reasons set forth in Defendant's Motion (Dkt. 137) and Memorandum in Support ("OPTO's Opening Daubert Brief") (Dkt. 138), and as further set forth below, Mr. Taylor should be precluded from offering expert testimony at trial pursuant to Rule 702 of the Federal Rules of Evidence.

## I.      INTRODUCTION

Faced with the reality that Mr. Taylor's opinions and corresponding trial testimony do not meet the Rule 702 requirements for admissibility, Honeywell now claims that testimony from Mr. Taylor relating to the interpretation of the parties' Settlement and License Agreement ("the Agreement") will only be offered "if the Court finds the Agreement's language to be ambiguous." Honeywell's Daubert Response, Dkt. 155, p. 2 n.1. Honeywell's claim is flatly contradicted, however, by Mr. Taylor's opening expert report, where he opines that OPTO breached the Agreement because it is ***unambiguous***, (Affirmative Report, Dkt. 138-1, p. 34), and by Mr.

1

Taylor's deposition testimony, where he confirms his opinion that the Agreement is ***unambiguous***. Ex. 4, Taylor Dep. Tr. 51:3-11.  In other words, Honeywell intends to offer the testimony of Mr. Taylor, who opines that the Agreement is ***unambiguous***, to testify at trial only if the Agreement is found to be ***ambiguous***.

Yet Mr. Taylor offers no opinion in his expert reports relating to the Agreement being found ***ambiguous***, and thus has no opinion that can be offered at trial. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert witness must submit a report that contains a "complete statement of ***all*** opinions the witness will express and the basis and reasons for them") (emphasis added); *see also Prassas Capital, LLC v. Blue Sphere Corp.*, No. 3:17-cv-131, 2019 WL 2881560, at *3 (W.D.N.C. July 3, 2019) ("It is well-established that expert testimony exceeding the bounds of the expert's report is excludable pursuant to Rule 37(c)(1).") (citations omitted); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (finding no abuse of discretion when district court excluded expert's trial testimony that exceeded the scope of his report).

Moreover, Honeywell's after-the-fact attempt to limit Mr. Taylor's testimony is inconsistent with Honeywell's repeated claim that the Agreement is ***unambiguous***. *See* Honeywell's Daubert Response, Dkt. 155, p. 2 n.1 ("Indeed, it remains Honeywell's position the contract is unambiguous and that the Court can resolve the contract-interpretation issue as a matter of law."); Honeywell's Motion for Partial Summary Judgment ("Honeywell's MSJ"), Dkt. 118, p. 12 ("The Definition of '2D Barcode Products' Is Unambiguous.") This inconsistency alone justifies exclusion of Mr. Taylor's opinions at trial.[1]

---

[1]    Even if the Court were to find that the Agreement is ambiguous, Mr. Taylor still should not be allowed to testify (in addition to the fact that he has no such opinion in his expert reports) because he is not an expert in the relevant industry. *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997) (affirming the district court's exclusion of an expert witness purporting to interpret the meaning and applicability of ambiguous contract terms); *WH Smith*

2

Finally, Honeywell's arguments that Mr. Taylor "will opine on questions of fact" (Dkt. 155, p. 9) are belied by the substance of Mr. Taylor's reports, which overwhelmingly consist of legal opinions regarding the interpretation of the Agreement (which Honeywell acknowledges is purely a question of law) and the viability of OPTO's patent misuse claim, which (again) are ***based on Mr. Taylor's interpretation of the Agreement***. Mr. Taylor's opinions and corresponding trial testimony are thus improper, and the Court should prohibit them from being offered at trial.

## II. ARGUMENT

Honeywell's Daubert Response in opposition to OPTO's Daubert Motion to exclude Mr. Taylor (Dkt. 155) fails to demonstrate that Mr. Taylor is a reliable and helpful witness. Indeed, Honeywell repeatedly makes admissions fatal to its argument—namely, that Mr. Taylor is interpreting the Agreement and the parties' rights and obligations under the Agreement, which are admittedly questions of law. Honeywell's Daubert Response, Dkt. 155, pp. 4-5. Such testimony by an expert is plainly inadmissible. *In re Zetia (Ezetimibe) Antitrust Litig.*, No 2:18-md-2836, 2021 WL 6690337, at *4 (E.D. Va. Aug. 16, 2021). Honeywell does not make any effort to contest this fact. Rather, Honeywell attempts to redirect this Court's attention from the law to Mr. Taylor's qualifications as a patent attorney, which have nothing to do with any issue of fact in this case. Honeywell's attempts to fit a square peg into a round hole ultimately fail.

---

*Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422 (7th Cir. 1994) (admitting expert testimony on industry custom and usage to assist in interpretation of ambiguous terms); *see also* Ex. 4, Taylor Dep. Tr. 76:20 – 78:11 (admitting that "2D symbologies" and "2D barcode products" are trade usage terms that he came to understand based on the evidence in this litigation "***just like any, you know, trier of fact***.") (emphasis added).

3

**A.** **Mr. Taylor Should be Precluded from Testifying at Trial Because Honeywell Intends to Offer Him for Testimony that Exceeds the Scope of the Opinions Contained in His Reports**

If, as Honeywell now claims, it intends to offer Mr. Taylor to testify only in the event this Court finds the Agreement is ambiguous, this Court must prohibit Mr. Taylor from testifying at trial because Mr. Taylor's testimony would contravene the plain language of the Federal Rules. Federal Rule of Civil Procedure 26(a)(2)(B)(i) requires experts to disclose a report that sets forth *all* the opinions they intend to offer at trial. The purpose of this disclosure is so that the opposing party may have "'reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" *Rembrandt Vision Techs.*, 725 F.3d at 1381 (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)). Failure to make the required expert disclosures under the Federal Rules results in the "self-executing sanction" of prohibiting the improperly disclosed expert from testifying to matters "beyond the scope of the witness's expert report." *Id.* (citing Fed. R. Civ. P. 37(c) and its advisory committee notes).

In the very first page of its Daubert Response, Honeywell admits that it intends to offer Mr. Taylor's testimony on a subject matter that exceeds the scope of the opinions contained in his reports. Honeywell's Daubert Response, Dkt. 155, p. 2 n.1. Mr. Taylor should therefore be prohibited from testifying at trial as to "the meaning of certain provisions in the . . . Agreement if the Court finds the Agreement's language to be ambiguous," (*id.*), because Mr. Taylor only opines, and testified under oath, that the Agreement is *unambiguous*. Affirmative Report, Dkt. 138-1, p. 34; Ex. 4, Taylor Dep. Tr. 51:3-11. Mr. Taylor has no opinions related to a scenario where the Court would find the Agreement *ambiguous*. Mr. Taylor accordingly cannot be allowed to testify at trial because Rule 37(c)'s self-executing sanction prohibits him from doing so. The Court should grant OPTO's Daubert Motion on this basis alone.

4

**B. Mr. Taylor's Reports Do Not Contain The Opinions That Honeywell Claims He Will Offer at Trial and Those That Are Included Are Purely Questions of Law**

OPTO and Honeywell agree that, as an experiential witness, Mr. Taylor is reliable only if he can sufficiently explain how his "experience leads to the conclusions reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *U.S. v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Mr. Taylor utterly fails that test, even if he is, as Honeywell contends, "an expert in intellectual property transactions." Honeywell's Daubert Response, Dkt. 155, p. 6.

### 1. The subjects that Honeywell now claims Mr. Taylor will testify about at trial are not contained in his reports

Honeywell maintains that, as an expert in "intellectual property transactions," Mr. Taylor can and will help the jury understand the "context and contours" of the provisions in the Agreement like the "license of patents," the "covenant not to sue on patents," and the "release on patents." *Id.* But nowhere in either of his reports does Mr. Taylor explain the "context and contours" of a license on patents, of a covenant not to sue on patents, or of a release on patents.[2] *See generally* Affirmative Report, Dkt. 138-1; Rebuttal Report, Dkt. 138-2.

Indeed, Honeywell's position—that Mr. Taylor will help the jury understand how contract provisions "do and do not function"—is simply wrong, as Mr. Taylor does not offer any of those opinions in his reports. Mr. Taylor does not explain what a patent license is; he just notes that Honeywell has "almost 10,000 patents"—none of which Mr. Taylor reviewed—that **could be** licensed under the Agreement. Rebuttal Report, Dkt. 138-2, p. 30; *see also* Taylor Dep. Tr., Dkt. 138-3, at 150:24–155:6 (explaining that a Honeywell representative provided him with a list of

---

[2]    Notably, Mr. Taylor testified that his reports "express all of the opinions I have been asked to opine upon to date." Ex. 4, Taylor Dep. Tr. 13:9-13.

patents ***likely implicated*** by the Agreement). Mr. Taylor further does not explain what a covenant not to sue is; he simply recites the covenant not to sue language in the Agreement. Affirmative Report, Dkt. 138-1, p. 23; Rebuttal Report, Dkt. 138-2, p. 24. Mr. Taylor also fails to explain what a "release" is, despite his claim that he can help the jury understand what that term means. Taylor Dep. Tr., Dkt. 138-3, at 114:23. In other words, Honeywell argues for the inclusion of Mr. Taylor's testimony based on opinions he does not actually provide in his reports. As noted above, it is not permissible for an alleged expert to testify at trial regarding opinions not set forth in the expert's reports. *Prassas Capital, LLC,* 2019 WL 2881560, at *3.

Honeywell attempts to distract from the absence of what it argues will be Mr. Taylor's testimony in his reports by relying on faulty case law and the fact that Mr. Taylor's has been admitted as an expert in previous litigations.[3] Honeywell's Daubert Response, Dkt. 155, pp. 7-8. But the sole case Honeywell cites, and the prior litigations Mr. Taylor was involved in, offer no support for Honeywell's position.

For example, although Honeywell is correct that in *Hopeman Bros. Inc. v. Cont'l Cas. Co.*, the expert was allowed to testify as to the "general principles" underlying how the contract at issue functions in the specialized insurance industry, (Honeywell's Daubert Response, Dkt. 155, p. 7), Honeywell overlooks the fact that the *Hopeman* expert was an expert in the insurance industry, ***not a legal expert***. No. 4:16-cv-187, 2018 WL 4169282, at *14 (E.D. Va. Jan. 12, 2018). Thus, the *Hopeman* expert was qualified to provide testimony on the "general customs, practices, and standards ***of the insurance industry***." *Id.* (emphasis added). In contrast, Mr. Taylor is not an expert in the barcode industry, as he readily and repeatedly acknowledged. *See, e.g.*, Taylor Dep.

---

[3] Notably, Honeywell does not even attempt to distinguish any of the cases OPTO cites in its opening brief in support of its argument that Mr. Taylor is not reliable and would not be helpful to the jury. *See* Honeywell's Daubert Response, Dkt. 155, pp. 5-10.

Tr., Dkt. 138-3, at 83:16 – 17; *see also* OPTO's Opening Daubert Brief, Dkt. 138, p. 12. If he were, perhaps it would be permissible for him to testify on how patent licenses ***in the barcode industry*** generally work or what barcode scanning technology features are generally licensed; but Mr. Taylor is not a barcode industry expert, and his testimony is no more useful or relevant here than it would be in a case involving a dispute over a patent license for a children's toy. Mr. Taylor's testimony thus cannot meet the standard for admissibility under Rule 702.

Moreover, that Mr. Taylor has previously been allowed to provide expert testimony in prior cases has no bearing on whether he should be allowed to provide testimony in this case. Mr. Taylor may have been allowed to testify about the "factual underpinnings of what might result in a determination of affiliate or control" in *Mobile Telecomms. Techs., LLC v. ZTE (USA) Inc.*, but he cannot do so here because he did not opine on any "factual underpinnings" to the parties' dispute. He simply regurgitated the facts as provided to him by Honeywell's counsel and then opined on pure questions of law. Ex. 4, Taylor Dep. Tr. 100:14-17. Mr. Taylor likewise may have been admitted as an expert on "contracts as they pertain to patents and foreign patent law" in the *Certain Smart Thermostats, Load Control Switches* ITC Investigation, but he was so admitted only because the other side lodged no objection. Honeywell's Daubert Response, Dkt. 155-4, pp. 11-12. Honeywell's argument that Mr. Taylor's admissibility in those cases somehow translates to admissibility in this case is misplaced.

### 2. *Mr. Taylor's opinions are pure legal conclusions, which demonstrates Mr. Taylor is nothing more than a "legal expert"*

The most glaring deficiency in Mr. Taylor's reports is that they only include legal conclusions based on Mr. Taylor's subjective interpretation of the Agreement. There can be no doubt as to the nature of his opinions in both his affirmative and rebuttal reports—Honeywell itself admits that Mr. Taylor, in his affirmative report, opines on the parties' legal rights under the

7

Agreement, (Honeywell's Daubert Response, Dkt 155, p. 4); and that Mr. Taylor, in his rebuttal report "explains in detail" the scope of the Agreement and what it does and does not permit the parties to do. *Id.* at 5. Honeywell's admissions alone make clear that all of Mr. Taylor's proffered testimony is inadmissible. *McCrink v. Peoples Benefit Life Ins. Co.*, No. 2:04-01068, 2005 WL 730688, at *4 (E.D. Pa. Mar. 29, 2005) (excluding expert from testifying where his opinion was based on his "subjective interpretation of . . . case law and the application of this case law to the instant dispute").

Honeywell doubles down on its admissions by repeatedly explaining that Mr. Taylor will explain how various provisions in the Agreement "fit together." Honeywell's Daubert Response, Dkt. 155, pp. 4, 8. But there is no question that determining how different provisions in a contract "fit together" is run-of-the-mill contract interpretation (and a question of law) and accordingly improper testimony for an expert. *See Apache Corp. v. W&T Offshore, Inc.*, No. H-14-0063, 2016 WL 10672072, at *2 (S.D. Tex. Sept. 28, 2016) (excluding expert whose opinions "depend[ed] on explaining how the various provisions of the contract work together").

Beyond Honeywell's admissions, however, Mr. Taylor's opinions are simply the legal arguments and conclusions that Honeywell's lawyers and have made in this litigation, ***most recently in Honeywell's summary judgment briefing***. For example, the opinions Mr. Taylor offers in his affirmative report—the proper construction of the "2D Barcode Products" definition, that the audit was not a condition precedent, and that OPTO breached the Agreement—mirror almost exactly the arguments Honeywell has advanced in its Motion for Partial Summary Judgment. *Compare* Affirmative Report, Dkt. 138-1, p. 3 *with* Honeywell's MSJ, Dkt. 118, p. 2. And a close

8

inspection of Mr. Taylor's affirmative report reveals that of the fifteen cases Mr. Taylor cites in his report, roughly half are cited in Honeywell's summary judgment briefing.[4]

Allowing Mr. Taylor to testify in this case would be to give Honeywell's legal arguments "'the elevated stamp of legal expert.'" *Latex Constr. Co. v. Nexus Gas Transmission, LLC*, No. 4:20-CV-01788, 2021 WL 3883626, at *2 (S.D. Tex. July 8, 2021) (quoting *Sparton Corp. v. U.S.*, 77 Fed. Cl. 1, 9 (2007)). Expert testimony like Mr. Taylor's— "testimony to serve the sole purpose of advising the Court on how to interpret" the Agreement—is an "improper" way of "offering legal arguments to the court" and must be excluded. *Sparton Corp.*, 77 Fed. Cl. at 9 (excluding a renowned contracts law professor from testifying when his testimony consisted of "legal conclusions based on the evidence of record").

Mr. Taylor's rebuttal report is no different than his affirmative report.[5] Mr. Taylor's rebuttal report simply advises the Court on patent law and interprets the Agreement and the parties' obligations under the Agreement in the context of that law. *See* OPTO's Opening Daubert Brief,

---

[4]     Some of the citations of those citations even appear to be simply copied and pasted with an extra word for flair. *Compare* Affirmative Report, Dkt. 138-1, p. 16 ("[T]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006)) *with* Honeywell's MSJ, Dkt. 118, pp. 11-12 ("Thus, 'the true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position in the parties would have thought it meant.'" (quoting *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006)).

[5]     Honeywell mischaracterizes the record as to the timeliness of expert reports. OPTO timely requested leave to submit an expert report on the economic impact prong of patent misuse because OPTO was waiting for Honeywell to produce documents (that Honeywell was ultimately ordered to produce). Dkt. 54, 60; s*ee also* Dkt. 115, p. 3. OPTO's request was granted, and OPTO timely served its economic impact report. However, notwithstanding the timeliness issues surrounding Mr. Taylor's rebuttal report, Mr. Taylor is not, in his rebuttal, offering any opinion on the economic impact of Honeywell's conduct. Thus, even if OPTO had submitted its economic impact report prior to Mr. Taylor's rebuttal report, the rebuttal report would still be improper rebuttal testimony. Fed. R. Civ. P. 26(a)(2)(D)(ii) (a rebuttal report is one "intended solely to contradict or rebut evidence on the ***same subject matter*** identified by another party" (emphasis added)).

Dkt. 138, Part I.C; Affirmative Report, Dkt. 138-2; Honeywell's Daubert Response, Dkt. 155, p. 5. But this Court "is presumed to be the patent law expert," *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 11-515, 2015 WL 12815314, at *3 n.8 (D. Del. Nov. 20, 2015), and Mr. Taylor may not advise this Court on that law. *See Sparton Corp.*, 77 Fed. Cl. at 9; *see also Proctor & Gamble Co. v. Teva Pharms. USA, Inc.*, No. Civ. A. 04-940, 2006 WL 2241018, at *1 (D. Del. Aug. 4, 2006) ("This Court excludes testimony by patent law experts on substantive issues of patent law.").

Moreover, and particularly with respect to Mr. Taylor's rebuttal report, Honeywell has not met its burden to establish the admissibility of Mr. Taylor's "rebuttal" opinions by a "preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). Indeed, in its Response, Honeywell makes virtually no argument as to why Mr. Taylor's rebuttal report contains reliable or helpful opinions. *See* Honeywell's Daubert Response, Dkt. 155, pp. 6-10. Mr. Taylor should thus be prohibited from offering his "rebuttal" testimony on that basis alone.

Ultimately, Mr. Taylor's opinions contained in both of his reports do not meet the reliability standards. His experience with "intellectual property transactions" does not support his opinions and his opinions are nothing more than pure legal conclusions advanced by Honeywell's counsel in this litigation. Mr. Taylor should accordingly not be permitted to offer his unreliable and conclusory testimony at trial.

### C. Mr. Taylor's Experience With The Barcode Scanning Industry Is Admittedly Nothing More Than "Just Normal" Experience

In its Response, Honeywell concludes, without any support, that Mr. Taylor's "testimony is . . . helpful." Honeywell's Daubert Response, Dkt. 155, p. 10. Yet Honeywell provides no legal or analytical argument as to Mr. Taylor's helpfulness and completely ignores the four pages in OPTO's opening brief explaining why Mr. Taylor is not a helpful expert. *Compare* Honeywell's

Daubert Response, Dkt. 155, pp. 5-10 *with* OPTO's Opening Daubert Brief, Dkt. 138, pp. 14-18. By so ignoring, Honeywell effectively waives its opposition to OPTO's argument that Mr. Taylor is not a helpful expert witness. *See, e.g.*, *O'Neill v. Open Water Adventures Inc.*, No. 3:20-cv-00476, 2021 WL 2652950, at *3 (W.D.N.C. June 28, 2021) ("Because Plaintiff did not respond to this portion of Defendants' argument, Plaintiff has forfeited the right to respond."); *Karsner v. Hardin Cnty.*, No. 3:20-cv-125, 2021 WL 886233, at *3 n. 2 (W.D. Ky. Mar. 9, 2021). But even if Honeywell had responded to OPTO's arguments, Honeywell cannot unwind the clock on what Mr. Taylor already testified to under oath—that his knowledge of the barcode scanning industry is simply within the "everyday knowledge and experience of a lay juror." *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 584 (E.D.N.C. 2015); *see also* OPTO's Opening Daubert Brief, Dkt. 138, pp. 17-18.

Mr. Taylor's admission eliminates the possibility that any portion of the opinions contained in his reports are admissible; each one of his opinions is either (1) an impermissible legal conclusion or (2) an unhelpful regurgitation of a fact already in the record. Mr. Taylor's opinions are accordingly the epitome of inadmissible expert testimony, and he should accordingly be precluded from offering them at trial.

### III. CONCLUSION

For the reasons stated above, Mr. Taylor should be precluded from testifying at trial and his opinions should be excluded entirely from this litigation. The only experience Mr. Taylor has relevant to this case is that he is a lawyer, and his legal-conclusion opinions are accordingly unreliable and are not helpful to the factfinder in this case. The Court should accordingly exclude Mr. Taylor's opinions and preclude him from testifying at trial.

Dated: March 29, 2023

                                    **MCGUIREWOODS LLP**

                                    */s/ Robert A. Muckenfuss*
Robert Muckenfuss, NC State Bar #28218
Zachary L. McCamey, NC State Bar #53540
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: 704 343 2351 Facsimile: 704 444 8869
rmuckenfuss@mcguirewoods.com
zmccamey@mcguirewoods.com

12

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court for the Western District of North Carolina by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Robert A. Muckenfuss*
Robert A. Muckenfuss