FILED UNDER SEAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | | |
|---|---|---|
| HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC., and METROLOGIC INSTRUMENTS, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:21-cv-00506 |
| v. | ) ) | JURY TRIAL DEMANDED |
| OPTO ELECTRONICS CO., LTD., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REJECTING
OPTO'S PATENT MISUSE AFFIRMATIVE DEFENSE AND COUNTERCLAIM**

i

# I.    INTRODUCTION

Honeywell mischaracterizes the facts and the law in its Motion for Partial Summary Judgment in an attempt to excuse its patent misuse. Indeed, Honeywell completely fails to mention that it has no active patents that cover the sole feature of OPTO's laser scanning barcode readers that Honeywell contends requires the payment of a patent royalty. Honeywell's omission of this crucial fact is simply the latest ploy in its continued campaign to extract royalty payments on OPTO's laser products that can decode stacked barcode symbologies—a feature on which Honeywell owns no patent and thus has no legal right to demand royalties. Honeywell's conduct thus constitutes *per se* patent misuse.

Further, and also contrary to Honeywell's characterization of this litigation, OPTO's claim of patent misuse is not barred by the Settlement and License Agreement between the parties. As Honeywell has itself repeatedly emphasized, this is a breach of contract action, and not a patent infringement action. OPTO is not challenging the enforceability of any of Honeywell's patents (indeed, Honeywell has no valid patent on stacked barcode symbologies to enforce). Instead, it is Honeywell that, through its asserted interpretation of the Agreement, is attempting to improperly revive its patent rights that have long since expired. Honeywell is accordingly incorrect to argue that the Settlement and License Agreement bars OPTO's patent misuse counterclaim.

Honeywell has spent years, dating back to at least 2019 when it initiated the ITC Investigation, attempting to force OPTO to pay patent royalties on its laser scanning products through claims of patent infringement—claims that Honeywell dropped in the ITC case and failed in negotiation to impose as a condition of settlement. The Court should not allow Honeywell to revive those claims in this case through a strained interpretation of the Settlement and License Agreement that would allow Honeywell to improperly benefit from patent rights that it does not

have and should deny Honeywell's Motion for Partial Summary Judgment on OPTO's affirmative defense and counterclaim of patent misuse.

## II.     FACTUAL BACKGROUND

As explained in earlier briefing, OPTO sells two broad categories of barcode decoding products. Products in the first broad category are operable to decode all barcode symbologies by capturing two-dimensional digital images of the barcode symbols, which are used to decode the symbols ("2D imaging products"). Products in the second broad category are operable only to decode barcode symbologies that encode data using variable-width vertical bars and spaces. Products in the second broad category can be separated into two subgroups. In the first, the bar-space symbologies are decoded by products that measure light intensities reflected from the symbol when a laser beam is scanned across the bars and spaces ("laser scanning products"). Products in the second subgroup measure the bar-space widths by capturing a single row of digital image pixels that are used to measure the captured light intensities across the row of pixels ("1D image sensor products"). For convenience, products in both subsets are referred to collectively herein as "laser scanning products."

On May 31, 2019, Honeywell filed complaints against OPTO (and specifically OPTO's U.S. subsidiary, OPTICON), in Delaware U.S. District Court and in the U.S. International Trade Commission ("ITC") alleging that OPTO's 2D imaging products and laser scanning products infringed certain Honeywell patents. The Delaware action was stayed pending the outcome of the ITC action. The sole remedy sought by Honeywell in the ITC action was an order excluding OPTO's importation of its 2D imaging products and laser scanning products into the United States.

Honeywell's ITC complaint originally asserted seven patents. Shortly after filing the ITC complaint and without explanation, Honeywell dropped one of the asserted patents, narrowing the

case to six patents. Significantly, OPTO responded to the ITC complaint, in part, by asserting evidence that each of the six patents was not infringed and that the asserted claims were invalid. Honeywell alleged that all six patents applied to OPTO's 2D imaging products. However, according to Honeywell, only one of the patents, U.S. Patent No. 7,159,783 ("the '783 patent"), applied to OPTO's laser scanning products.

At the conclusion of discovery, the Administrative Law Judge in the ITC case ordered Honeywell to narrow its asserted patents and claims to only four patents and a total of 15 patent claims. Dkt. 135-3. On November 15, 2019, Honeywell responded to the order by providing a list of the four patents it intended to assert at trial. Dkt. 135-3, at 9. Conspicuously, the '783 patent was not included in the list. *Id.* As such, Honeywell voluntarily dropped all allegations of patent infringement against OPTO's laser scanning products, ensuring that any import exclusion order resulting from the ITC matter would not include OPTO's laser scanning products. OPTO would be free to import and sell its laser scanning products regardless of the outcome of the ITC investigation.

Honeywell dropped OPTO's laser scanning products from the ITC investigation after receiving full discovery on the features and functions of the laser scanning products, including the products' software source code and design documents. Honeywell also took the depositions of OPTO engineers who designed the products. That discovery was available to Honeywell's experts who assisted Honeywell's lawyers in drafting a "claim chart" that characterized the laser scanning products as "1D products" and purportedly mapped the '783 patent claim elements to the laser scanning products' features and functions. Importantly, Honeywell had full discovery of OPTO's non-infringement and patent invalidity defenses asserted against the '783 patent—and Honeywell

risked an order invalidating the patent if it proceeded to trial with the patent in the case. Against that background, Honeywell dropped OPTO's laser scanning products from the case.

Prior to trial in that matter (but subsequent to Honeywell dropping the '783 patent), the parties executed the Settlement and License Agreement ("the Agreement"), ending both the ITC investigation and the Delaware case. *See* Dkt. 169, at 5-8. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

A covenant not to sue is a common mechanism used by patent owners to protect their patents from invalidation in declaratory judgment actions. The covenant not to sue defeats a court's subject matter jurisdiction and results in dismissal of the declaratory judgment action because, as a consequence of the covenant, there is no case or controversy to adjudicate. *See Dow Jones & Co. v. Ablaise Ltd*., 606 F.3d 1338, 1345-49 (Fed. Cir. 2010) ("The covenant . . . extinguished any current or future case or controversy between the parties and divested the district court of subject matter jurisdiction"). In patent litigation, a covenant not to sue is basically a patent owner's white flag of surrender. A covenant not to sue neither conveys patent rights to nor imposes any obligations on its beneficiary recipient. The parties simply declare a truce and walk away.

In its summary judgement briefing in this case, Honeywell feigns surprise in learning that OPTO did not pay royalties on its sales of laser scanning products. According to Honeywell's interpretation of Section 1.4, OPTO's laser scanning products are royalty-bearing "2D Barcode Products" because they are operable to decode at least one stacked multi-row barcode symbology.

████████████████████████████████████████████████████

4



_____ Ex. A (9/29/22 Def.'s Supp. Obj. and Resp. to Plf's First Set of Int.). Although OPTO has since removed that functionality from its laser scanning products, virtually every OPTO laser scanning product was operable to decode at least one stacked multi-row barcode symbology at the time the parties signed the Agreement.

Having received full discovery about OPTO's laser scanning products prior to settlement, including the products' software source code, Honeywell was in no way ignorant of the laser scanning products' operability to decode stacked multi-row barcode symbologies. In fact, the product source code and other discovery about OPTO's laser scanning products was in the possession of Honeywell's lawyers *at the time of settlement*.

If, as Honeywell now asserts in this case, _____ _____ _____ _____. Honeywell's opportunistic interpretation of Section 1.4 in this case thus completely reads the covenant not to sue out of the Agreement. _____ _____ _____ _____ In reality, what Honeywell gave with one hand in the Agreement; it now seeks to take away in this case with the other.

Honeywell therefore neither negotiated the Agreement nor brought this litigation in good faith. Viewed in this light, it should be clear that Honeywell attempts to achieve in this contract dispute what it failed to achieve and gave up in the prior patent litigation—forcing OPTO to pay

5

royalties on its laser scanning products or exclude those products from the market. According to Honeywell, OPTO can avoid royalties only by disabling its laser scanning products' operability to decode stacked multi-row barcode symbologies, ***which is the one and only market segment in which OPTO's lower priced laser scanning products compete with Honeywell's higher priced 2D imaging products***. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ OPTO removed that functionality from its laser scanning products, and consumers no longer have that cheaper alternative from OPTO to scan and decode stacked multi-row barcode symbols—which are used on drivers' licenses in most states, on 3 million airport boarding passes printed daily, and on parcels handled by many of the major carrier companies.

That outcome might be warranted if Honeywell owned patents claiming the stacked multi-row barcode symbologies themselves (it does not) or patents claiming laser scanner decoding of stacked multi-row barcode symbologies (it did, but the patents expired before the royalty obligations under the Agreement arose). Honeywell's interpretation of the Agreement, therefore, imposes royalty obligations on OPTO's laser scanning products for one feature only—operability to decode stacked multi-row barcode symbologies, for which Honeywell owns no patent and has no legal right to either demand royalties or exclude that product feature. If Honeywell's interpretation of the Agreement is correct, therefore, the royalty provisions of the Agreement are unenforceable as a result of Honeywell's patent misuse.

## III.     RESPONSE TO HONEYWELL'S STATEMENT OF UNDISPUTED FACTS

1.     OPTO does not dispute that the Agreement granted OPTO a royalty-bearing license for OPTO to use Honeywell's "U.S. Patent Portfolio" in OPTO's "2D Barcode Products."

6

2.    OPTO concurs that it stated, ████████████████████████

████████████████████████████████████████████████████████

██████████ Those patents, however, are subject to Honeywell's covenant not to sue, and OPTO owes Honeywell no royalty on the use of those patents.

3.    OPTO disputes the statement that "OPTO has offered no evidence or contention that any of its products do not infringe (but for the license) one or more of Honeywell's patents." To the extent that the claims of any Honeywell patent, including the '783 patent, encompass features and functions of OPTO's laser scanning products, they do not infringe because of the covenant not to sue—not because of the license granted in the Agreement. Honeywell confirmed that OPTO's laser scanning products may use the '783 patent and other patents royalty free and subject to the covenant not to sue, provided they are not operable to decode stacked multi-row barcode symbologies. *See* Dkt. 144 at 8-9.

When explaining its justification for demanding royalties on laser scanning products that decode stacked multi-row barcode symbologies, ████████████████████████

████████████████████████████████████████████████████████

██████████ The '783 patent provides no justification for Honeywell's royalty demand on laser scanning products that decode stacked multi-row barcode symbologies. Moreover, the '783 patent expired last month and can in no way justify applying the Agreement's royalty provisions, which extend nine more years into the future, to OPTO's laser scanning products. And there is no counterpart to the '783 patent in Europe and Japan to justify Honeywell's demand for royalty payments on sales of laser scanning products in those regions.

Finally, while Honeywell owned U.S. Patent Nos. 7,007,849; 7,325,740; and 8,226,009, which each claimed laser scanning and decoding of stacked symbologies, each of those three

patents is expired. *See* Dkt. 169 at 7. The first two patents expired by the expiration of their terms, and Honeywell abandoned the third by failing to pay its maintenance fee. The subject matter claimed by those patents is therefore dedicated to the public. Honeywell thus has no non-expired patent justifying its royalty demands on laser scanning products that are otherwise fully embraced by the covenant not to sue, except for Honeywell's misguided claim that operability to decode stacked multi-row barcode symbologies (and that functionality alone) subjects the products to the Agreement's royalty provisions.

        4.     OPTO does not dispute that the Agreement includes ██████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████

## IV.   LEGAL STANDARD

   Summary judgment is appropriate if the movant shows there is no genuine dispute of material fact. Lack of a dispute entitles the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it could impact the case's outcome. *News Observer Pub. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A genuine dispute of material fact exists when there is evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## V.   ARGUMENT

### A.   Honeywell's Contract Interpretation Results in Patent Misuse

To be clear, OPTO's affirmative defense and counterclaim of patent misuse do not apply under the correct and proper interpretation of Section 1.4's definition of royalty-bearing "2D Barcode Products," as set forth fully in OPTO's summary judgment briefing. *See* Dkt. 134,

8

OPTO's Memo. in Support of its Mot. For Summary Judgment. When Section 1.4 is read as a whole and correctly construed, the definition of "2D Barcode Products" encompasses only OPTO's 2D imaging products, and OPTO sells its laser scanning products free of any obligation to Honeywell as a consequence of the Agreement's covenant not to sue. *Id.* The correct interpretation of Section 1.4 preserves the bargained-for division between royalty-bearing and non-royalty-bearing products. *Id.*

Honeywell's interpretation of Section 1.4, however, results in patent misuse because the Honeywell patents that once claimed laser decoding of stacked multi-row barcode symbologies expired before the Agreement was signed. There is no patent justification for imposing a royalty on OPTO's laser scanning products simply and only because they are operable to decode stacked multi-row barcode symbologies. Honeywell admits that operability to decode those symbologies is the only basis for its royalty demands—according to Honeywell, it " ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████ Under that interpretation of Section 1.4, the royalty provisions of the Agreement are unenforceable.

## B. Honeywell's Contract Interpretation Results in "*per se*" Patent Misuse

Honeywell's Motion correctly acknowledges two forms of *per se* patent misuse, both of which are present in this action:

> Indeed, "courts have identified certain specific practices as constituting *per se* patent misuse including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good" and "arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties."

Dkt. 163 at 7 (quoting *Va. Panel Corp. v. MAC Panel Corp.*, 133 F.3d 860, 869 (Fed. Cir. 1997)).

Significantly, *per se* patent misuse requires no additional market analysis demonstrating that the conduct has adverse economic effects. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001-02 (Fed. Cir. 1986) ("To sustain a misuse defense involving a licensing arrangement not held to have been *per se* anticompetitive by the Supreme Court, a factual determination must reveal that the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market"). As noted in OPTO's counterclaim, OPTO asserts that Honeywell's patent misuse is *per se* patent misuse but nevertheless pled that the misuse has adverse economic effects out of an abundance of caution. Dkt. 14 at 28-30. OPTO likewise served the expert report of Dr. Greg Adams that documents the adverse economic effects of Honeywell's patent misuse only out of an abundance of caution.

C.      **The '783 Patent and Other Honeywell Patents Do Not Negate Patent Misuse**

Honeywell wrongly asserts that ███████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████ courts have dealt with this type of patent misuse before. *Id*. at 10.

The crux of Honeywell's argument is that regardless of their operability to decode stacked multi-row barcode symbols, OPTO's laser scanning products fall within the scope of, at least, the '783 patent, and Honeywell could have refused to license OPTO to sell the products at all. In other words, because Honeywell could have excluded OPTO's products based on any number of

patents, it should not matter that the royalty obligation arises from the products' operability to decode stacked multi-row barcode symbols. That appears to explain Honeywell's cavalier statement that "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. That is not a correct statement of the law of patent misuse.

Indeed, the fact that products fall within the claim scope of the patent owner's patents and the accompanying right to exclude is present in every single *per se* patent misuse case involving a tying arrangement. Arguably, in each such case, the patentee could have refused to license the patents at all. In each case, however, it is the ***manner in which*** the patentee chose to license the patents that results in *per se* patent misuse. The issue, therefore, is not whether OPTO's laser scanning products fall within the scope of Honeywell's patents, but rather, whether Honeywell through its license "seeks to extend the monopoly of [those patents] to derive a benefit not attributable to use of the patents' teachings." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136 (1969).

Honeywell's asserted interpretation of the Agreement leaves no doubt about the benefit that Honeywell seeks to derive from its alleged licensing of OPTO's laser scanning products. According to Honeywell, an OPTO laser scanning product can be sold royalty free and with a covenant not to sue on all relevant patents (including the '783 patent) unless the laser scanning product can decode stacked multi-row barcode symbols.

In other words, Honeywell singles out laser scanning products operable to decode stacked barcode symbols—with no apparent patent justification for doing so. Laser decoding of stacked multi-row barcode symbols is not a claimed teaching of any active Honeywell patent that

11

Honeywell has identified to justify its royalty demands in this case. And stacked multi-row barcode symbols themselves are not otherwise especially adapted to the infringement of any active Honeywell laser scanning patent. *See Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 213-14 (1980) (patentee may control market of non-staple goods especially adapted to infringement of the claims). Infringement of the '783 patent, for example, does not depend on the type of barcode symbol that is decoded. Honeywell therefore is using its laser scanning patents to control a specific market—the market for laser scanning products that decode stacked multi-row barcode symbols—without a patent justification for singling out stacked multi-row barcode decoding.

Consider an alternative scenario in which Honeywell's licensing scheme was based on an actual patented feature of OPTO's laser scanning products. For example, the '783 patent claims barcode scanners that allow the user to customize certain programming scripts. If the Agreement said that OPTO could sell its laser scanning products royalty free and with a covenant not to sue unless the products' programming scripts were customizable by the user, then the royalty demand would be based on a patented feature. And the limitation on laser scanning products with that feature would fall within the public bargain of tolerating patent-related market restraints in order to promote innovation.

But that is not the situation here. Honeywell's royalty demand is based on a non-patented feature of OPTO's laser scanning products. Enablement of that non-patented feature alone allegedly converts a non-royalty-bearing laser scanning product into a royalty-bearing product. That is why Honeywell's asserted interpretation of "2D Barcode Products" under the Agreement results is *per se* patent misuse.

As previewed above, this is a type of tying arrangement. There are many *per se* patent misuse cases involving a "tie-in" where the licensee agrees "to do something" such as purchase non-patented goods from the patentee as a condition of the license. Conversely a "tie-out" arrangement is where the licensee agrees "not to do something" such as not to sell non-patented goods that compete with patented products. *See, e.g.*, *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350, 1359 (D. Colo. 1996) (license capped the number of permitted purchases of non-infringing "bases" used with surgical device); *Columbus Automotive Crop. v. Oldberg Mfg.*, 264 F. Supp. 779, 781 (D. Colo. 1967) (agreement not to sell competing non-patented shock absorbers); *In re Clausen Co.*, 81 B.R. 285, 287 (Bankr. D.N.J. 1988) (agreement not to make/sell containers that infringe the patent *or similar* containers; agree to pay $5 royalty on dispensers that infringe the patent *or similar* dispensers); *Krampe v. Ideal Industries*, 347 F. Supp. 1384, 1385-86 (N.D. Ill. 1972) (agreement not to sell products identical with or *similar to* the patented device); *Compton v. Metal Products, Inc.*, 453 F.2d 38, 44 (4th Cir. 1971) (agreement not to sell "equipment of the type licensed" "indicates clearly that more than a restriction upon the specific machines embodying the licensed patents was contemplated").

As the cases cited above show, most tie-out cases involve some type of agreement not to compete. However, a tie-out can be accomplished, as in this case, through patent royalties that are tied to unpatented goods or functions. *See Pyrene Mfg. Co. v. Urquhart*, 69 F. Supp. 555 (E.D. Pa. 1946); *see also In re Clausen Co.*, 81 B.R. at 287 ($5 per-product royalty). The *Urquhart* patent covered a foam dispensing device used in firefighting. *Id.* at 556. The patent also covered the method of using the device to dispense the firefighting foam. *Id.* However, the chemical "stabilizer" that mixed with water to create the foam was itself unpatented. *See id.* (noting that the "Urquhart patents have to do with a different type of fire foam" from a water-based foam).

Urquhart licensed certain manufacturers to make the devices and to sublicense their customers who purchased stabilizer from the manufacturer for use under the patent's method claims. *Id.* at 560. Urquhart collected royalties on both the sale of the devices and the sublicensing fees paid by the manufacturers' customers on each purchase of non-patented stabilizer for use in their devices. *Id.* Urquhart also offered use licenses independently to anyone who purchased stabilizer from sources other than the licensed manufacturers. *Id.* But the royalty on the stabilizer-use license that Urquhart offered independently was substantially greater than the sublicense offered by the licensed manufacturers. *See id.* at 560-61. Consequently, all stabilizer sales were made by Urquhart's licensed manufacturers, thereby constraining the market for non-patented stabilizer by effectively tying-out independent sellers of the stabilizer. *See id.* at 561.

The court ruled that the royalty scheme was a misuse of the patent and had the effect of constraining the market for unpatented stabilizer. *Id.* Importantly, the court explained, "The discrimination involved is, not as the Urquharts appear to view it, between manufacturers and users but between two classes of users. The effect of the discrimination is to limit free competition in the stabilizer field by penalizing users who buy from all except certain manufacturers." *Id.* Here, Honeywell's patent misuse has already resulted in the removal of non-patented OPTO laser scanning product features that competed with Honeywell's 2D imaging products for scanning stacked multi-row barcode symbologies. Those non-patented OPTO product features effectively have been removed from the market through Honeywell's unjustified royalty demands tied to non-patented features.

Indeed, Honeywell's asserted royalty scheme here is even more egregious than the royalty scheme in the *Urquhart* case. Just as Urquhart did not have patents covering the chemical stabilizer, Honeywell does not have patents covering any of the stacked multi-row barcode symbologies—

they were invented by other companies. The Urquhart patent, at least, claimed the method of using the chemical stabilizer with the patented devices. *See id.* at 556.

Here, however, Honeywell's method patents covering the use of laser scanners to decode stacked multi-row barcode symbols are expired, and contract provisions that selectively require royalty payments for that "post-expiration use" are *per se* unenforceable. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 459 (2015) ("A court need only ask whether a licensing agreement provides royalties for post-expiration use of a patent. If not, no problem; if so, no dice"). Likewise, Honeywell's assertion that the '783 patent justifies its selective royalty demands for decoding stacked multi-row barcode symbols indisputably demonstrates that Honeywell "seeks to extend the monopoly of [the '783] patent to derive a benefit not attributable to use of the patent's teachings," which is *per se* patent misuse. *See Zenith Radio*, 395 U.S. at 136.

According to Honeywell, OPTO's laser scanning products may use the claimed '783 patent technology royalty free under the covenant not to sue, provided that the products are not operable to decode stacked multi-row barcode symbols—which is not functionality claimed in the '783 patent. Neither the '783 patent nor any other Honeywell patent applicable to OPTO's laser scanning products grants to Honeywell any right to require royalties for laser scanner decoding of stacked multi-row barcode symbols.

Moreover, at least two-thirds of the patent royalties demanded by Honeywell relate to OPTO's past sales of laser scanning products in Europe and Japan. None of the patents identified by Honeywell as justifying those royalty demands are patents issued in those regions. Honeywell's U.S. patents do not grant Honeywell any exclusionary rights as to OPTO's sales of laser scanning products in those regions. Even if Honeywell at one time had such patents in those regions, Honeywell may not use the Agreement here to extend royalty obligations under foreign patents.

*See Compton*, 453 F.2d at 44 (royalty demand in U.S. litigation on foreign sales after expiration of foreign patents unlawful); *Tulane Education Fund v. Debio Holding*, 177 F. Supp. 2d 545, 551 (E.D. La. 2001) (citing *Compton*).

**D.    The Agreement Does Not Preclude OPTO's Counterclaim of Patent Misuse**



Dkt. 163-2 at § 5.3.

Honeywell contends ████████████████████████ preclude OPTO's assertion of patent misuse in this case: ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████    As set forth below, Honeywell's contentions are wrong.

**1.    *OPTO does not challenge the enforceability of any patent***

As discussed above and explained in OPTO's Memorandum in Support of its Motion for Summary Judgment Regarding Plaintiffs' Patent Misuse, OPTO's patent misuse affirmative defense and counterclaim are based on Honeywell's attempt to require royalties under the Agreement on expired patents, which is "unlawful per se" because the payment of royalties on

expired patents "conflict[s] with patent law's policy of establishing a 'post-expiration . . . public domain' in which every person can make free use of a formerly patented product." *Kimble*, 576 U.S. at 451-52 (quoting *Brulotte v. Thys Co.*, 379 U.S. 29, 32-33 (1964)).

The remedy for this type of *per se* patent misuse is not to declare Honeywell's **patents** unenforceable, but instead to render unenforceable the Agreement's royalty provisions. *See Kimble*, 576 U.S. at 453 ("The *Brulotte* rule . . . make[s] contract provisions unenforceable."). Indeed, in *Kimble*, the Supreme Court affirmed the lower courts' rulings "that *Brulotte* made 'the royalty provision . . . unenforceable after the expiration of the Kimble patent.'" *Id.* at 450 (citation and quotation omitted) OPTO's patent misuse affirmative defense and counterclaim therefore in no way breaches ███████████████████████████████████████████████████████.

### 2. This is contract dispute, not a patent enforcement action

Honeywell's Complaint in this case alleges breach of contract only. The Complaint does not allege patent infringement, and Honeywell does not seek to enforce any of its patents in this case. It is well settled law that "[a] counterclaim challenging the validity of a licensing agreement is a contractual dispute, and not an action arising under the patent laws." *Bogglid v. Kenner Prods., Div. of CPG Prods. Corp.*, 853 F.2d 465, 468-69 (6th Cir. 1988) (relying on *Wilson v. Sanford*, 51 U.S. (10 How.) 99 (1850) and noting that royalty provisions of license agreement held invalid under *Brulotte*). ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████.

Moreover, OPTO asserts that Honeywell's conduct constitutes *per se* patent misuse such that proof of any anticompetitive effect of the patent misuse is not required for Honeywell's assertion of post-expiration patent royalty demands. In fact, the Supreme Court declined the

invitation in *Kimble* to require an application of "antitrust law's rule of reason to identify and invalidate those post-expiration royalty clauses with anti-competitive consequences." *Kimble*, 576 U.S. at 459. Instead, the Court explained that "it applie[s] a categorical principle that all patents, and all benefits from them, must end when their terms expire." *Id*. at 463. Accordingly, "post-patent royalty contracts are unenforceable—utterly 'regardless of a demonstrable effect on competition.'" *Id*. (quoting 1 Hovenkamp § 3.2d, at 3-10). A finding of anticompetitive effect therefore is not a necessary element of OPTO's patent misuse affirmative defense and counterclaim.

## VI. CONCLUSION

For the foregoing reasons, OPTO respectfully requests that the Court deny Honeywell's Motion for Partial Summary Judgment Rejecting OPTO's Patent Misuse Affirmative Defense and Counterclaim.

Dated: April 10, 2023

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Robert A. Muckenfuss*
Robert Muckenfuss, NC State Bar #28218
Zachary L. McCamey, NC State Bar #53540
Jessica O'Brien, NC State Bar #56679
MCGUIREWOODS LLP
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
Telephone: 704 343 2351 Facsimile: 704 444 8869
rmuckenfuss@mcguirewoods.com
zmccamey@mcguirewoods.com
jobrien@mcguirewoods.com

Tyler T. VanHoutan
MCGUIREWOODS LLP
Texas Tower, Ste 2400
845 Texas Avenue

Houston, TX 77002
Telephone: 832-214-9911
tvanhoutan@mcguirewoods.com

Christine E. Lehman
Connor S. Houghton
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
1909 K St, NW, Suite 800
Washington, DC 20006
Telephone: 650-623-1401
clehman@reichmanjorgensen.com
choughton@reichmanjorgensen.com

York M. Faulkner
YORKMOODYFAULKNER
Tensho Bldg., 7F, Suite 711
3-17-11 Shibaura, Minato-ku
Tokyo, Japan 108-0023
Telephone: +1-202-251-0837
york.faulkner@ymf-law.com

*Attorneys for Defendant Opto Electronics Co., LTD.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court for the Western District of North Carolina by using the CM/ECF system. Counsel for all parties in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Robert A. Muckenfuss*
Robert A. Muckenfuss