IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00506-KDB-DCK

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., ET AL., <br><br> **Plaintiffs,** <br><br> v. <br><br> OPTO ELECTRONICS CO., LTD., <br><br> **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiffs' Motion for Reconsideration (Doc. No. 196) in which Plaintiffs (collectively "Honeywell") ask the Court to reconsider a portion of its ruling on the parties' various motions for summary judgment (Doc. No. 195) and proffer an "Offer of Proof" with respect to the additional arguments it seeks to present. The Court has carefully considered this motion and the parties' briefs and exhibits. Because the Court finds that Honeywell already had a fair chance to present its arguments on the issues for which it seeks reconsideration, the Court will **DENY** the motion.

As discussed further below, Honeywell not only had notice of these issues and an opportunity to put "its best foot forward," it jumped in with both feet to argue in favor of its own positions and against OPTO on all the issues it now claims it is "surprised" that the Court decided. While Honeywell may not have expected and is disappointed that the Court wouldn't accept its arguments, to say that the disputed issues related to Section 5.1 of the parties' Agreement weren't fully before the Court - *and squarely placed there by Honeywell itself* - is just revisionist history.

1

As the saying goes, Honeywell quite deliberately made its litigation bed and now it must lie in it, for good or for ill.[1]

## I. LEGAL STANDARD

While the Federal Rules of Civil Procedure do not specifically contain a "motion for reconsideration," such motions are allowed in certain, limited circumstances. Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Yet, "the discretion Rule 54(b) provides is not limitless," *id.*, and the power to reconsider or modify interlocutory rulings is committed to the discretion of the district court. *See Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1473 (4th Cir. 1991).

Courts treat interlocutory rulings as the "law of the case," which, while important for the Court and the parties' interests in promoting finality, are not subject to the strict standards applicable to motions for reconsideration of a final judgment. *Carlson*, 856 F.3d at 325 (citing *Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514-515 (4th Cir. 2003). Thus, grounds for Rule 54(b) reconsideration include: (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent manifest injustice. *Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). Notably,

---

[1] In the Court's Summary Judgment rulings, the Court's interpretation of the Agreement on the first major section contested by the parties went in Honeywell's favor (and, of course, Honeywell does not ask the Court to reconsider that ruling). *See* Doc. No. 195. Thus, Honeywell's repeated suggestions that the Court has acted rashly and treated it unfairly is, to say the least, puzzling.

such motions are "not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Id; DIRECTV, INC. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004). The motion is also inappropriate where it "merely reiterates previous arguments." *Univ. of Va. Patent Found. V. Gen. Elec. Co.*, 755 F.Supp. 2d 738, 744 (W.D. Va. 2011).

With respect to the entry of summary judgment against Honeywell challenged in this motion, "district courts may enter summary judgment *sua sponte*[2] 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Velasquez v. Salsas & Beer Rest., Inc.*, 735 F. App'x 807, 809 (4th Cir. 2018), quoting *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 661 (4th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact and it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration. *Velasquez*, 735 F. App'x at 809, citing *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989).

In the relevant context of a ruling in favor of a nonmovant in a motion for summary judgment brought by the opposing party, the Fourth Circuit (citing other circuits) has refined this "notice" requirement to permit entry of summary judgment "sua sponte" without issuing a separate

---

[2] OPTO also moved for Summary Judgment on Honeywell's "breach of contract" claim, which includes Honeywell's claim under Section 5.1 of the Agreement. *See* Doc. No. 132. So, a cross motion for Summary Judgment on that claim was in fact pending. However, OPTO limited its arguments in its own Summary Judgment motion to Honeywell's Section 1.4 rather than Section 5.1 claim (which it addressed in response to Honeywell's motion); therefore, the Court will, for purposes of this motion, consider the Court's entry of summary judgment as *sua sponte* even though strictly viewed it was not.

3

notice where the circumstances establish that the party reasonably should have understood summary judgment could be entered against it. *See Velasquez*, 735 F. App'x at 809 (affirming district court *sua sponte* grant of summary judgment without independent notice, with the court noting that the opposing party's position that it was entitled to prevail on the contested issue was clear from its opposition to moving party's motion and answer and the need to prevail on the contested issue would have been known to the initial moving party); *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223–24 (3d Cir. 2004) (described with approval in *Velasquez* as holding that adequate notice "mean[s] that the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward"); *Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985) (cited by *Velasquez* as holding "*[S]ua sponte* summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the *non-moving* party is entitled to judgment as a matter of law.") (emphasis in original).³ So, the question before the Court is whether, in the particular context of this case, should Honeywell have known that Summary Judgment might be entered against it such

---

³ Honeywell criticizes OPTO's citation of *Velasquez* as inapt, but it rather appears to the Court that Honeywell's cited Fourth Circuit cases are distinguishable. In both *Moore v. Equitrans*, 27 F.4th 211, 224 (4th Cir. 2022), and *U.S. Dev. Corp. v. Peoples*, the court, quite unlike the facts here, entered summary judgment against a party "without any summary judgment motions before it and without giving proper notice to the parties." *See Moore*, 27 F.4th at 224; *U.S. Dev. Corp*. 873 F.2d at 735–36 ("The facts of this case demonstrate conclusively that appellant was not afforded sufficient notice. The district court entered summary judgment against the fourth count by the identical order in which it allowed the claim to be added to the complaint. No notice is clearly not sufficient notice."). How a court gives proper "notice" to parties when it decides totally on its own accord to consider entry of summary judgment – *even though no summary judgment motion has been filed* – is a very different issue from the present situation where Honeywell itself moved for summary judgment and was undoubtedly aware that the issues it presented (and the parties repeatedly briefed and argued to the Court) could be decided in OPTO's favor.

4

Case 3:21-cv-00506-KDB-DCK    Document 223    Filed 06/02/23    Page 4 of 10

that it had a fair opportunity to put its "best foot forward." *See Gibson*, 355 F.3d at 224 ("Given that it was [plaintiff] who moved for summary judgment on the issues of vagueness and overbreadth, he certainly had the opportunity to put his 'best foot forward.'").

## II. DISCUSSION

As discussed above, in the interest of the finality of its rulings and to discourage unending litigation, the Court should exercise its discretion to reconsider a prior order only where there is: (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) clear error causing "manifest injustice." *See Carlson*, 856 F.3d at 325. Honeywell has not argued that there has been any change in the applicable law nor that any of the copious "new" evidence it proffers was unavailable during the Court's consideration of summary judgment. Rather, although it does not directly address the applicable elements of a motion for reconsideration, Honeywell apparently contends that "clear error" and "manifest injustice" may be found in the Court allegedly "ma[king] a decision outside the adversarial issues presented to the Court by the parties." Specifically, Honeywell argues that the Court made two "out of bounds" rulings: (1) the Court's alternative[4] holding that the Agreement precludes a claim of contractual breach related to the reporting of sales in Section 5.1 outside of the parties' negotiated process and limits for pursuing additional payments for such underreporting and (2) that Honeywell failed to comply with Section

---

[4] The Order's primary holding was that OPTO is entitled to summary judgment on the claim for breach of Section 5.1 made by Honeywell in the Complaint; that is, that OPTO is obligated to pay the "monetary damages specified in the Agreement," i.e., the additional payments due as a consequence of a timely audit that established the required amount of underreported sales. *See* Doc. No. 1 at ¶ ¶ 24, 34; Doc. No. 195 at 11-15. As discussed in the Order, Honeywell did not (despite its current citation to vague and/or summary allegations that merely refer to its actually plead claim under Section 5.1) assert a separate, different claim for breach of contract untethered to the Agreement's audit provisions and the Court will not exercise its discretion to permit a new claim so close to trial. *See* Doc. No. 195 at 16-17. So, even if Honeywell was entitled to pursue a separate claim for breach of Section 5.1, it failed to do so.

5

5.1's audit provision. The Court disagrees and will accordingly deny the motion for reconsideration.

First, as to whether Honeywell was required to pursue the agreed audit process to obtain any recovery for breach of Section 5.1, that issue was first directly put at issue by Honeywell in its moving brief in support of its Motion for Partial Summary Judgment, then argued by OPTO in its response, and addressed again in Honeywell's reply. No one, least of all Honeywell, should have been surprised that the Court ruled on the issue. For example:

- "OPTO now suggests that Honeywell was required to conduct and complete an audit within one year of the Effective Date as a condition precedent to bringing suit. Dkt. 14 at pp. 8–10. But that is simply not what the Agreement says." Doc. No. 118 (Moving brief) at 18.

- "Because OPTO takes issue with the details of how the audit was conducted, it avers that Section 5.1 *required* Honeywell to conduct an audit by an independent auditor before it could file a suit for breach of contract. But Section 5.1 is devoid of any requirement that Honeywell perform an audit before filing a breach-of-contract suit … In sum, the Agreement simply does not require Honeywell to exercise its optional audit right before it can bring an action for breach." Doc. No. 118 at 20 (emphasis in original).

- "Now, OPTO seeks to go far beyond the words of the Agreement and suggest that the audit was an absolute requirement to filing this suit altogether. That is incorrect." Doc. No. 118 at 20, n.5.

- "In sum, the Agreement simply does not require Honeywell to exercise its optional audit right before it can bring an action for breach." Doc. No. 118 at 20.

- "Similarly, Section 5.1 of the Agreement imposed strict conditions on Honeywell's ability to recover any sum based on a divergence from OPTO's represented 2D Barcode Products sales amounts—an independent audit conducted within one year of the Agreement's Effective Date. That was the bargained for procedure for *any remedy* directed to OPTO's represented pre-settlement sales of 2D Barcode Products, and that procedure must be strictly enforced." Doc. No. 135 (Response brief) at 28 (emphasis added).

- "Th[e] … terms [related to the audit] were a condition precedent to *any* recovery concerning OPTO's representation and warranty of its pre-

- settlement sales of 2D Barcode Products." Doc. No. 135 at 29 (emphasis in original).

- "OPTO contends that Section 5.1 of the Agreement "expressly prescribed the procedure by which Honeywell could recover *any additional payment* due from OPTO's underreporting of its total pre-settlement sales." Dkt. 135 at 21 (emphasis added). This is not what Section 5.1 says." Doc. No. 144 at 12 (Reply brief citing OPTO response)

- "There is no language in Section 5.1 or elsewhere in the Agreement that required Honeywell to perform an audit before bringing a breach of contract action and OPTO points to no such language in its Response." Doc. No. 144 at 14

In sum, Honeywell had abundant opportunities to "put its best foot forward" on this issue and took full advantage of them. While Honeywell's arguments ultimately fell short in the Court's view, there has been no clear error nor is there manifest injustice in the Court declining to reconsider its considered Order. Therefore, the Motion for Reconsideration on this point will be denied.[5]

Similarly, Honeywell was on notice from the beginning of the action that OPTO alleged that Honeywell's audit was untimely and argued its contrary position throughout the litigation. As noted above, in the very first sentence in the Section 5.1 portion of its summary judgment brief, Honeywell cited to OPTO's First Affirmative Defense (Nonperformance of Condition Precedent), "Dkt. 14 at pp. 8-10." In that pleading, OPTO clearly stated its belief that Honeywell's audit was untimely and unexcused, alleging:

> Honeywell neither conducted, nor substantially conducted, the audit referenced in Paragraphs 20 to 23 of the Complaint within the calendar year ending on January 22, 2021, and therefore failed to perform an express condition precedent to the relief provided for in Section 5.1 of the Agreement and as demanded in the Complaint.
> …

---

[5] The remainder of Honeywell's arguments on this first topic are either relitigation of the merits of the Court's ruling or different arguments that Honeywell could have but chose not to raise throughout the extensive briefing described above. In the absence of a proper showing that the Court should reconsider its Order, it need not further address these arguments.

> [Honeywell] likewise fails to provide sufficient detail justifying Honeywell's undue delay in noticing the audit until approximately one month before the January 22, 2021 deadline.

Doc. No. 14 at 9. *See also id.* at 10 ("Honeywell therefore did not conduct, or even substantially conduct, the audit within the January 22, 2021 deadline…"); Doc. No. 135 at 23 ("**Substantial compliance is not sufficient**.")(bolded in original).

In its Reply brief in support of its summary judgment motion, Honeywell directly responded to OPTO's argument as to the timeliness of the audit, contending that the Court should read the Agreement to require "only … that the audit is to be "conducted" (not completed) within one (1) calendar year," Doc. No. 144 at 14, and that Honeywell's audit was timely because "[a]s OPTO concedes, the audit was initiated within one year of the Effective Date." *Id.* At oral argument, Doc. No. 204 at 61-64, Honeywell reprised this argument that the Agreement should be interpreted to equate "conducting" with "initiating":

- "I don't agree that it had to have been completely finished and wrapped up within a calendar year."

- "So let me grammatically read it a little bit different, because I don't think that's what it actually says. It says, "Such audit may be conducted no more than one time within one calendar year." We did not conduct an audit more than one time within one calendar year. That's what it says. We didn't do that."

- "Honeywell had 12 months to inform them and take an audit, and that's what happened in this case."

- "And the fact that they didn't give us the last document until, you know, a couple months later, I don't think that means that we didn't "conduct" an audit within one year. I don't view the word "conduct" means completely finalize, put in a bow and hand it to somebody else within one year."

- "And it is true that some of the documents they provided didn't come in until the March time frame. That's true. But I don't think that means we didn't conduct the audit within one year. I would absolutely disagree with any characterization of that."

So, again, Honeywell had an ample opportunity to make its arguments on whether it timely completed its audit. To be sure, it made a calculated litigation choice to argue that the Agreement should be read to equate "conducted" with "initiated" rather than to claim "substantial compliance," which OPTO had specifically denied from the beginning of the case, or make some other argument.[6] Once the Court declined to accept Honeywell's interpretation and accepted OPTO's argument that the Agreement required the audit to be completed within a year, the undisputed facts, as acknowledged by Honeywell above and elsewhere in the record, make clear that the audit was untimely because the parties did not complete the audit until March 31, 2021, months after the deadline. *See* Doc. 197 at 19 (noting hundreds of emails sent after the one year period ended). Therefore, the Court did not commit clear error and there is no manifest injustice in affirming the Court's entry of Summary Judgment in favor of OPTO on Honeywell's claims under Section 5.1 of the Agreement.

---

[6] Although it argues it was not fully permitted to do so, Honeywell did repeatedly argue that OPTO's delays in providing information impacted its ability to complete the audit within one year (although it never made a claim in the Complaint that OPTO violated the Agreement with respect to providing information). *See, e.g.*, Doc. No. 118 at 8. However, rather than make any legal argument that such conduct excused Honeywell's failure to timely complete the audit (or assert the "waiver" argument it raises for the first time in its briefing), it chose instead to argue that it did in fact timely "conduct" the audit based on its interpretation of the Agreement. A motion for reconsideration is not a path for a party to make new arguments after it is unsuccessful with the arguments it chooses to make on summary judgment.

## III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion for Reconsideration (Doc. No. 196) is **DENIED**; and

2. This case shall proceed to trial on the merits of the remaining claims in this action (and only those claims) in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 2, 2023

*[Signature]*

Kenneth D. Bell
United States District Judge