IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00506-KDB-DCK

HONEYWELL
INTERNATIONAL INC.;
HAND HELD PRODUCTS, INC.
AND METROLOGIC
INSTRUMENTS, INC.,

    Plaintiffs,

    v.

OPTO ELECTRONICS CO.,
LTD.,

    Defendant.

**ORDER**

**THIS MATTER** is before the Court on numerous pretrial motions, including the Parties' Motions in Limine (Doc. Nos. 233, 239, 244 and 251); Defendant's Motion to Strike Honeywell's Second Amended Objections and Responses to Defendant's First Set of Interrogatories (Doc. No. 307); and motions to quash trial subpoenas to Honeywell, Alston & Bird and Adam Doane (Doc. Nos. 315, 317 and 319). The Court has carefully considered these motions, the parties' briefs and exhibits and oral argument on the motion from the parties' counsel at the pretrial conference and hearing held on July 11, 2023. For the reasons stated during the hearing and further discussed below, the Court will **GRANT** and **DENY** the motions as follows:

1

## I. MOTIONS IN LIMINE

### A. Honeywell's First Motion In Limine (Doc. No. 233)

In its first motion in limine, Honeywell seeks to "Exclude Testimony or Argument About Information Learned Solely from Communications Between OPTO and Its Counsel." Specifically, Honeywell asks the Court to exclude the portions of the testimony of OPTO's 30(b)(6) witness Mr. Shigeaki Tanaka in which he testified that he and the other members of the OPTO Board of Directors had an "understanding" or "believed" that some patents had been "withdrawn" in the parties' ITC dispute and that the remaining patents required use of a "2D image scanner." *See, e.g.*, Doc. 301-2 at deposition pp. 31-34. At Mr. Tanaka's deposition, he testified that this belief was based on information provided to the board by OPTO's legal counsel. However, when Honeywell asked the witness "what did [the lawyer] tell you that led you to believe that many patents had been withdrawn," (and similar questions) Mr. Tanaka was instructed not to answer the questions on the grounds of attorney-client privilege. *Id*. at p.34.

Honeywell argues that because OPTO did not allow the witness to testify to the full factual basis for OPTO's belief with respect to the withdrawal of patents in the ITC proceedings, OPTO should be precluded from offering this testimony. The Court agrees. In offering testimony as to the OPTO Board's "belief" or "understanding" as to the withdrawal of patents, etc. in the ITC action, OPTO necessarily opens the door to questions as to how the Board reached those conclusions, which inquiry includes, at least,[1] the entire factual basis on which the Board relied. And, Honeywell is entitled to that information even if the information was provided to the Board

---

[1] The Court need not and does not reach the thornier issue of whether OPTO waived any attorney-client privilege as to any legal advice (as distinguished from factual information) that OPTO's attorney provided the Board. Here, OPTO instructed Mr. Tanaka not to testify about anything the attorney said, whether it be factual information or legal advice.

2

by an attorney. Simply put, OPTO cannot offer testimony that it held a belief on some subject then effectively deny Honeywell an opportunity to explore the basis for the belief, so that the finder of fact can determine, among other things, if the belief was reasonable in light of what was actually said to the Board. Accordingly, the Court will grant Honeywell's first motion in limine as it relates to the challenged portions of Mr. Tanaka's deposition.[2]

B. **Honeywell's Second Motion in Limine (Doc. No. 239)**

In its second motion in limine Honeywell seeks to "Exclude Evidence or Argument About the Interpretation of '2D Barcode Products' or '1D Barcode Products.'" By this motion, Honeywell asks the Court to limit the "extrinsic" evidence that OPTO may introduce in support of its defense of Honeywell's claims of breach of contract,[3] specifically the claim that OPTO failed to pay all royalties due under Section 4 of the Agreement. Honeywell argues that the Court has already ruled that the relevant Section 1.4 of the Agreement (that describes which products are royalty bearing) is unambiguous so OPTO should not be permitted to introduce evidence that contradicts the Court's interpretation (citing as an example the testimony of an OPTO witness that the focus of Section 1.4 should be on the third sentence, an argument that the Court has previously rejected). In response, OPTO disclaims any intent to offer evidence that contradicts the Court's interpretation of the terms of the Agreement. Rather, it says that it intends to limit its evidence to proof that its challenged products are not royalty bearing using the Court's interpretation of the terms of the

---

[2] The Court will enter a separate Order with respect to the specific deposition designations that details the scope of this ruling.

[3] The Parties acknowledge that the analysis of the relevance of some of the disputed evidence may not be the same for OPTO's affirmative defenses, which raise different issues. The discussion here relates only to the introduction of evidence on Honeywell's Section 4 affirmative breach of contract claim. If the Court decides at trial to permit the introduction of evidence that is only properly admitted with respect to OPTO's affirmative defenses, it will give an appropriate limiting instruction to the jury.

3

Agreement. The Court agrees with both parties. That is, it will not permit the introduction of evidence that promotes a contradictory interpretation of the Agreement;[4] however, it will permit OPTO to present relevant evidence[5] in support of its position that its products should not be found to be royalty bearing under the Agreement, as construed by the Court. Accordingly, Honeywell's second motion in limine is denied, without prejudice to Honeywell raising specific objections at trial consistent with this Order.

### C. Honeywell's Third Motion in Limine (Doc. No. 244)

Honeywell's third and final motion in limine seeks to exclude evidence related to two "claim charts" that Honeywell's current trial counsel Alston & Bird prepared and produced in the ITC proceeding. The charts are entitled "Claim Chart Showing Infringement of U.S. Patent No. 7,159,783 by the 1D Products" (the "1D Claim Chart") (OPTO's proposed Exhibit 6) and "Claim Chart Showing Infringement of U.S. Patent No. 7,159,783 by the Accused Devices" (the "2D Claim Chart") (OPTO's proposed Exhibit 7). OPTO seeks to introduce the charts to support its positions on both Honeywell's breach of contract claim and its affirmative defenses. More specifically, OPTO alleges that the language of the 1D Claim Chart referring (by specific product numbers) to several of the products in dispute as "Opticon 1D Products" is evidence that those

---

[4] For example, the Court does not (at this time) intend to instruct the jury on "course of performance," "course of dealing" or "usage of trade" with respect to the breach of contract claim. The jury must decide the question of breach based on the language of the Agreement, as construed by the Court.

[5] At the pretrial hearing, the Court discussed at length with the Parties the issues related to what evidence may or may not be relevant to Honeywell's royalty claims (some of which is addressed elsewhere in this Order). The Court reiterates that truly "extrinsic" evidence should not be offered on these claims. However, the Court wants to make clear to the Parties that the introduction of evidence on this issue will not be a one-way street. If one party introduces (without objection or over an objection) what the Parties referred to as "extrinsic" evidence (i.e., evidence of a party's reference to "1D" or "2D" products unrelated to the Agreement) then the other party will be permitted to do likewise.

products (and other similar products) were considered by Honeywell to be "1D" products on which royalties are not due under the Agreement. OPTO intends to use the "2D Claim Chart," which lists a number of OPTO products which are admitted by all to be "2D" and not in dispute, to show that Honeywell separately characterized those products as "2D." Honeywell seeks to exclude the claim charts as irrelevant, because admission is allegedly barred by the ITC Protective Order, and the lack of "production" and "authentication" of the document in discovery (the document was served but not filed in the ITC proceedings).

The Court finds that the documents may be admitted, but only with respect to the jury's consideration of OPTO's affirmative defenses.[6,7] The question before the jury on Honeywell's breach of contract claim centers on whether OPTO's disputed products are "2D" or "1D" *as defined in the Agreement*. Honeywell referring to some of those products in a patent claim chart as "1D Products" without any reference to the Agreement or, perhaps more to the point, to the issue of "symbologies" raised by the relevant definition in the Agreement does not make it more or less likely that the products in fact are (or are not) royalty bearing products.[8] That must be determined based on the language of the Agreement. Thus, the claim charts are not (currently) admissible with respect to the breach of contract claim.

However, Honeywell's characterization of specific products as "1D" and "2D" in the ITC proceedings may be relevant to OPTO's affirmative defenses of quasi-estoppel and unilateral

---

[6] Again, the exclusion of the ITC claim charts on the breach of contract claim will be reconsidered (and reversed) if Honeywell "opens the door" as discussed above.

[7] To the extent the claim charts are alleged to be relevant to the patent misuse claim being tried to the Court, the claim charts will be admitted and the Court will give them such weight as it determines is appropriate.

[8] Indeed, the only reference the Court could find in the 1D Claim Chart related to "symbologies" states that the "Opticon OPN-4000i data sheet [shows that] … "[the product] supports a number of symbologies."

5

mistake. As to those issues, the claim charts are relevant to show whether Honeywell's representation of specific products as "1D" and "2D" in the ITC action unfairly led OPTO to believe that those same products would be considered "1D" and "2D" under the Agreement and whether Honeywell either itself believed the products were "1D" or "2D" or stayed silent knowing OPTO believed otherwise.[9] Therefore, Honeywell's third motion in limine will be denied to the extent that the claim charts are offered as evidence on OPTO's affirmative defenses.[10]

### D. OPTO's Motions in Limine (Doc. No. 251)

#### 1. OPTO's Removal of Functionality from its Products

OPTO's first motion in limine asks the Court to exclude evidence or argument about OPTO's removal of the ability of certain products to read stacked linear barcodes as a result of this litigation as a "subsequent remedial measure" under Federal Rule of Evidence 407. In response, Honeywell argues that changing a product to reduce liability under a licensing agreement does not come within the scope of Rule 407 and the change has relevance beyond the improper argument

---

[9] To be clear, Honeywell's "belief" about whether a particular product is in fact "1D" or "2D" under the Agreement is different than whether the product actually comes within the Agreement's definition. If Honeywell believed that the disputed products that it now contends are royalty bearing 2D products were non-royalty bearing 1D products at the time the Agreement was executed then there would be a mutual mistake. If instead, Honeywell agreed that the products were 1D products but in fact knew that the language of the Agreement would be read to make them 2D products and stayed silent, those facts could form the basis for reformation of the Agreement based on the defense of unilateral mistake.

[10] With respect to Honeywell's arguments other than relevance the Court is persuaded 1) that the ITC Protective Order was not intended to prevent a party from retaining or disclosing its own confidential information (and Honeywell has not identified any of its own confidential information in the claim charts); 2) Honeywell was well aware in discovery that the documents were being relied upon by OPTO and had access to the documents (in their own lawyer's document system) if it wanted to use them in discovery; and 3) OPTO should be able to readily "authenticate" the document through Honeywell or its counsel (which conceded at oral argument that it had no reason to believe the documents did not accurately reflect the claim charts served in the ITC action).

that the change reflects OPTO's belief that the products are royalty bearing if the functionality in dispute is not removed.[11] The Court disagrees with Honeywell and will grant the motion.

First, OPTO's modification of the products does qualify as a subsequent remedial measure. The reasoning behind Rule 407, to permit accused defendants to make product changes subsequent to the filing of an action without fear that the change will be used to prove their liability for conduct prior to the change, applies to contracts as well as torts claims. *See, e.g.*, *Reynolds v. Univ. of Pennsylvania*, 747 F. Supp. 2d 522, 535 (E.D. Pa. 2010) (finding that "[b]ecause a breach of contract is culpable conduct . . . the plain language of Rule 407 indicates that it applies to breach of contract cases," and that "the purpose of Rule 407 applies with equal force to both tort cases and breach of contract cases.") (citing *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1045 (7th Cir. 2007)), *aff'd*, 483 F. App'x 726 (3d Cir. 2012) ("the District Court did not err in holding that Rule 407 barred evidence of . . . subsequent remedial measures in this breach of contract action."). Indeed, it would be an absurd result if a defendant could only reduce its potential liability under a patent licensing agreement (by changing a product or other means) at the risk of being held to essentially making an admission of liability. Post-litigation product changes in this context do not necessarily make liability any more or less likely; rather, they affect *damages* (the amount and timing of which is not really in dispute here).

Moreover, even if there was some limited relevance to the product changes, the probative value of the evidence is far outweighed by the danger of prejudice and jury confusion in allowing the evidence to be admitted. Accordingly, the motion is granted.

---

[11] Notwithstanding its protestations to the contrary, the Court finds that the primary reason Honeywell seeks to offer this evidence is to have the jury believe that OPTO's modification of the products is an implicit admission of liability.

## 2. Discovery Disputes

The parties have represented to the Court that this dispute has been resolved; therefore, OPTO's second motion in limine will be denied as moot.

## 3. OPTO's Litigation Reserve

OPTO's third motion in limine asks the Court to exclude any evidence or argument concerning OPTO's litigation reserve as reflected in its financial statements. The Court agrees with OPTO that such evidence is irrelevant to the merits of this case. First, the litigation reserve reflects the judgment of an auditor as to the likely outcome of the trial (not the merits of the claims). As such, it makes no material fact in dispute either more or less likely. Further, it is clear that the auditor's conclusion includes consideration of claims on which the Court has granted summary judgment for OPTO as well as OPTO's own attorneys' fees, which cannot be an element of Honeywell's recovery. In opposition to OPTO's motion, Honeywell argues that the evidence should be admitted because it is "publicly available." However, whether business information is readily known or confidential has no bearing on its relevance to the issues to be decided by the jury. Finally, to the extent this evidence has any probative value (and it appears to have none), such value is substantially outweighed by the risk of unfair prejudice and confusing the issues for the jury. As such, the evidence will be excluded under Federal Rules of Evidence 401, 402, and 403.

## 4. David Taylor's Testimony

OPTO's fourth motion in limine relates to the testimony of David Taylor, Honeywell's legal expert who it proposes to "educate" the jury on various issues. The Court has previously expressed its skepticism over the propriety of Mr. Taylor's testimony and ruled that he may not testify as to certain topics. *See* Doc. No. 195 at pp. 24-26. The Court continues to believe that it is

8

Case 3:21-cv-00506-KDB-DCK   Document 330   Filed 07/13/23   Page 8 of 14

unlikely that Mr. Taylor's testimony would assist the jury; however, Honeywell represented at oral argument that Mr. Taylor would, at most, serve as a rebuttal witness and thus may not even testify to the jury.[12] Accordingly, the Court will defer ruling on this motion until it becomes necessary to do so and the specifics of Mr. Taylor's testimony can be proffered to the Court.

### 5. Honeywell's Unpled Breach of Contract Theories

OPTO's fifth motion in limine asks the Court to limit the presentation of claims to the jury to those alleged breaches of contract that Honeywell pled in its Complaint (which it chose never to amend). The Court has previously limited Honeywell's claims to those pled in the Complaint, *see* Doc. No. 195, and will do so again here. At oral argument, the Court informed Honeywell that it would be permitted to present to the jury its pled claims for breach of contract and related damages under Sections 4.3[13] and 4.6 of the Agreement. Also, the Parties agreed that Honeywell's claim for "fees and costs" under Section 4.7 would be handled later by the Court. However, Honeywell is not permitted to present evidence on or argue to the jury[14] any claim of breach of contract under Sections 3.1, 5.1, 5.3 or 9.9, none of which are pled in the Complaint.

### 6. Honeywell's Trial Attorney "Testimony" During Argument

OPTO's sixth motion in limine asks the Court to prohibit Honeywell's trial counsel, who were also involved in the earlier ITC proceedings, the preparation of the ITC claim charts and

---

[12] To the extent Honeywell intends to have Mr. Taylor testify in the bench trial, the Court is likely to allow his testimony and give it such weight as the Court finds appropriate. However, the Court will first require a proffer of his testimony so that the Court can direct Honeywell towards a proper scope for his examination.

[13] With respect to Honeywell's unpled (but related) claim under Section 4.5 (alleged failure to provide accurate royalty reports) the Court finds that while the substance of the claim will be evidence in support of Honeywell's Section 4.3 claim for unpaid royalties, it would be duplicative and confusing to the jury to permit Honeywell to assert it as a separate claim.

[14] This ruling does not limit Honeywell's ability to assert any portion of the Agreement, including the listed sections, in defense against OPTO's claims of patent misuse in the bench portion of the trial.

negotiation of the Settlement Agreement, from "testifying" during attorney argument. In response, Honeywell's counsel represented that they well understood that such conduct would be improper and draw a strong rebuke from the Court. With that representation, the Court finds that there is no need for a ruling on this motion at this time.

### 7. Honeywell's Previous Licensing Discussions with OPTO

OPTO's seventh motion in limine seeks to preclude Honeywell from presenting any testimony or evidence related to any previous attempts by Honeywell to license any of its patents to OPTO. The Court understands that the earlier discussions between the Parties occurred in 2011 and 2013, long before the litigation and Agreement in dispute here. Accordingly, the previous licensing communications have little or, more likely, no relevance to the issues to be presented to the jury. Also, to the extent these discussions have any tenuous probative value, such value is substantially outweighed by the risk of unfair prejudice and confusing the issues for the jury. Therefore, the Court will grant OPTO's motion and exclude this evidence under Federal Rules of Evidence 401, 402, and 403.

### 8. OPTO's Analysis of Potential Infringement of Honeywell Patents

OPTO's final motion in limine asks the Court to exclude evidence or testimony related to OPTO's analysis of its potential infringement of Honeywell's patents. OPTO contends, and the Court agrees, that evidence of whether or not OPTO believed it infringed Honeywell's patents (and, relatedly, why it settled the ITC and Delaware actions) is unlikely to be relevant to the merits of the issues before the jury. However, at oral argument Honeywell represented that this evidence, if it is presented, would be rebuttal evidence. Accordingly, as with Mr. Taylor's testimony above, the Court will defer ruling on this motion until it becomes necessary to do so and the specifics of the testimony can be proffered to the Court.

## II. OPTO's MOTION TO STRIKE HONEYWELL DISCOVERY (Doc. No. 307)

In addition to its motions in limine, OPTO filed, on July 5, 2023,[15] a motion requesting that the Court strike Honeywell's Second Amendments to OPTO's First Set of Interrogatories served on June 7, 2023, as untimely and unfair. The Court will not belabor its analysis of this motion as it appears that, with one exception discussed below, it will have little practical effect on the Parties' preparation for trial. Since the earliest case management orders entered in this action, the deadline for the Parties to supplement their interrogatory responses under Rule 26(e) has been set for June 7, 2023. *See* Doc. Nos. 40, 131. Thus, Honeywell's "supplementation" of its discovery responses was timely and will not be stricken. Moreover, several of the challenged modifications to Honeywell's discovery responses relate to unpled claims that the Court has ruled will not be part of the case presented to the jury or to the Court; therefore, any improper (as distinguished from untimely) supplementation is moot and need not be addressed.

There is, however, one supplemented interrogatory that the Court finds it must address to prevent unfairness to OPTO. In response to Interrogatory 13, which asked Honeywell to "identify all patents, whether active or expired, owned by or assigned to Honeywell, that You contend claim decoding of PDF417, MicroPDF417, composite codes, or GS1 stacked codes by laser scanning," Honeywell modified its earlier response (which had only listed one patent and generally noted that Honeywell owns "thousands" of relevant patents) to identify over 100,000 pages of documents "from which additional responsive information may be ascertained." No specific additional patents were identified within the additional 100,000 pages. The Court agrees with OPTO that "supplementation" in this manner is plainly unfair.

---

[15] While the Court understands that the Parties have been busy with preparation for trial during June 2023, OPTO's delay of almost a month in seeking to strike this discovery in some respects belies the urgency and unfairness suggested by its motion.

Honeywell defends its response on the grounds that the same 100,000 pages were cited months earlier in response to a different Interrogatory, No. 1. However, Interrogatory No. 1 asks Honeywell only to "Identify all patents that You contend are licensed to OPTO under the Settlement Agreement, setting forth all facts upon which You base Your contention and identifying all Documents and other evidence that support Your contention." Honeywell's earlier identification of 100,000 pages and thousands of patents thus did not necessitate OPTO's review of the cited pages; instead, it merely delineated the universe of patents which might be relevant in the action. In sum, adding the same entire patent universe to an interrogatory that requests identification of specific patents directed to a particular art is very different and, in the Court's view, goes beyond the limits of proper "supplementation" under Rule 26(e).

Accordingly, the Court directs Honeywell to identify to OPTO, on or before, 5 p.m. on July 14, 2023, any specific patents in addition to the 7,159,783 Patent that it intends to offer at trial (whether to the jury or to the Court) with respect to the subject of Interrogatory 13 (i.e. "patents that claim decoding of PDF417, MicroPDF417, composite codes, or GS1 stacked codes by laser scanning.") In the absence of such identification, the Court will grant OPTO's motion only with respect to the "supplementation" of Interrogatory 13.

### III. MOTIONS TO QUASH

In addition to its motions in limine, Honeywell has filed three motions to quash trial subpoenas issued to Honeywell (Doc. No. 315), Alston & Bird (Doc. No. 319) and Adam Doane (Doc. No. 317), an in-house attorney at Honeywell who formerly worked at Alston & Bird and served as one of Honeywell's counsel in the ITC action. OPTO issued the subpoenas for the purpose of seeking testimony authenticating and providing the evidentiary foundation (e.g. that documents are admissible as business records under Federal Rule of Evidence 803(6)) for

12

documents produced by Honeywell. These documents include the ITC Claim Charts discussed above as well as communications involving Alston & Bird.

Honeywell challenges the subpoenas to Honeywell and Alston & Bird on several grounds, including the lack of a named person being subpoenaed in the entity subpoenas and the risk of the disclosure of work product and privileged communications. Based on the representations of counsel at oral argument, however, it appears that the Court need not resolve the motions as to these entities at this time. First, Honeywell represents that it does not intend to contest the authenticity of any document produced from Honeywell's files (with a Honeywell bates number). Further, the Parties together represented to the Court that they would meet in good faith to resolve any remaining dispute about the admissibility of their exhibits. The Court expects that the Parties can identify their own business records and agree on the admissibility of such records in that process. Also, with respect to the subpoena of Alston & Bird, OPTO agreed that the need for the subpoena would be satisfied if Mr. Doane's subpoena was not quashed (which is the Court's ruling below). Therefore, the Court will defer ruling on the motions to quash the subpoenas to Honeywell and Alston & Bird, which may well be moot.

With respect to the subpoena to Mr. Doane, Honeywell raises two issues. First, it expresses its legitimate concern that Mr. Doane will be required to disclose privileged attorney-client communications. In response, OPTO represents that it does not intend to seek privileged information from Mr. Doane, intending to question him about the ITC claim charts and communications with OPTO's counsel, neither of which are privileged communications. Further, the Court will, of course, respond at trial to any improper effort to elicit privileged testimony from Mr. Doane. Therefore, Honeywell's objection to the subpoena based on the potential disclosure of privileged communications will be overruled.

Honeywell's second challenge to the subpoena is that Mr. Doane was not properly disclosed in OPTO's Rule 26 discovery disclosures or otherwise identified as a potential trial witness until OPTO served its list of trial witnesses in June 2023. While the Court agrees with Honeywell that OPTO should have identified Mr. Doane as a potential witness earlier in the litigation (and OPTO does not argue otherwise), it also agrees with OPTO that Mr. Doane should not be precluded from testifying under Federal Rule of Civil Procedure 37(c)(1) because the failure to disclose him is harmless in these circumstances. *See* Fed. R. Civ. Proc. 37(c)(1). Honeywell is not prejudiced by allowing Mr. Doane to testify. Mr. Doane is clearly identified as a participant in communications which Honeywell has long understood are a central part of OPTO's arguments so it should not be a surprise to Honeywell that he might be asked to testify. Also, in his role overseeing the litigation, he is intimately familiar with the case so the time for him to prepare to testify should be minimal. Finally, of course, this is not a situation in which a party has no means to depose or otherwise determine what a late identified witness will say at trial. Honeywell has full access to Mr. Doane, its own employee. Accordingly, the Court will deny the motion to quash the subpoena to Mr. Doane.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 13, 2023

Kenneth D. Bell
United States District Judge