**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-00506-KDB-DCK**

| | |
|---|---|
| **HONEYWELL INTERNATIONAL INC.; HAND HELD PRODUCTS, INC. AND METROLOGIC INSTRUMENTS, INC.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**OPTO ELECTRONICS CO., LTD.,**<br><br>    **Defendant.** | **ORDER** |

Now before the Court in this long running and contentious litigation[1] are the Parties' post-trial motions; specifically, Plaintiffs' Motion for Fees and Costs (Doc. No. 360) and Defendant's Motion for Judgment as a Matter of Law, Alternative Rule 59 Motion for a New Trial and Renewed Motion for Summary Judgment (Doc. No. 374). After careful consideration of the motions, the Parties' briefs and exhibits and all relevant parts of the record in this matter, the Court will deny both motions.

Plaintiffs ("Honeywell") prevailed in both the jury and bench trials in this action. Defendant ("OPTO") asks the Court to overrule the jury verdict as a matter of law, award summary judgment or grant a new trial based on its arguments that the "Second Amendment" to the Parties' License and Settlement Agreement ("Agreement") requires judgment in its favor. OPTO had a full

---

[1] The animosity among counsel has continued to the bitter end, with Honeywell's counsel objecting to a routine request for a three day extension of time to file a brief that was due at the end of the Labor Day weekend. *See* Doc. No. 387.

and fair opportunity to present its evidence and arguments to the jury and the Court. While OPTO's arguments were potentially persuasive and the Court would have upheld a jury verdict in OPTO's favor, the Court finds that there was sufficient evidence to support the jury's and the Court's verdicts. Further, the Court rejects OPTO's argument that a limiting instruction related to evidence underlying OPTO's "Second Amendment" arguments (to which OPTO did not object) was plain error requiring a new trial. Therefore, OPTO's post-trial motions will be denied.

As is well known, the "American Rule" requires each party to a legal dispute to pay its own attorney fees in the absence of an express statutory or contractual right to recover those fees. In its motion, Honeywell seeks "fees and costs" – primarily attorney fees – under Section 4.7 of the Agreement. However, that provision, drafted by sophisticated counsel, does not mention "*attorney* fees" (like every other case under governing Delaware law that has awarded attorney fees under a contract). In addition to failing to refer to "attorney" fees, which are specifically referenced in several other parts of the Agreement, Section 4.7 lacks the "prevailing party" language that is the "hallmark" of fee shifting provisions under Delaware law and may not even apply to "court" actions, which are the subject of a separate section of the Agreement that says nothing about the award of attorneys' fees. Finally, the evidence shows that when Honeywell wanted to negotiate a contractual provision that clearly shifted attorney fees to the prevailing party, it knew how to do so, both in the Agreement and in similar licensing agreements with other companies. Therefore, Honeywell has failed to prove a "clear and unequivocal agreement" to shift attorney fees, and its motion for "fees and costs" will accordingly be denied.

# I.     LEGAL STANDARD

OPTO seeks judgment as a matter of law under Federal Rule of Civil Procedure 50(b) and alternatively a new trial under Rule 59.[2] If a party timely makes a motion for judgment as a matter of law under Rule 50(a), a party may "file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).When the loser of a jury trial challenges the verdict under Rule 50(b), "the question is whether a jury, viewing the evidence in the light most favorable to [the winning party], could have properly reached the conclusion reached by this jury." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 784 (4th Cir. 2023). All disputed facts must be construed in favor of the party who won at trial and it must be given the benefit of all reasonable inferences. *Id*.; *See Konkel v. Bob Evans Farms Inc*., 165 F.3d 275, 279 (4th Cir. 1999).   A jury verdict will thus withstand a Rule 50(b) motion unless "there is no legally sufficient evidentiary basis" to support the jury verdict. *See Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001); *Pracht v. Saga Freight Logistics, LLC*, No. 3:13-cv-00529, 2016 WL 3032691, at *2 (W.D.N.C. May 26, 2016) (citing *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004)). In sum, "once a jury has evaluated witness credibility, weighed evidence, and reached a verdict, a litigant seeking to overturn that verdict faces a steep hurdle." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 722 (4th Cir. 2019)

---

[2] OPTO also briefly (and without citing authority) seeks to "renew" its Motions for Summary Judgment Regarding Breach of Contract and Plaintiff's Per Se Patent Misuse "for purposes of appellate preservation." The Court fails to understand this portion of OPTO's motion. To the extent an issue was resolved at summary judgment and not tried, no "renewal" of the Rule 56 motion is necessary to preserve the issue for appeal (nor would it be timely under the Rules or the governing Case Management Order). As to issues tried to the jury or the Court, a party may pursue motions under Rules 50 and 59. In any event, the Court need not separately describe the standard for review of a motion for summary judgment, which mirrors the standard for Rule 50 motions for judgment as a matter of law. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644 (4th Cir. 2002).

Under Federal Rule of Civil Procedure 59, "a district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017). Improper evidentiary rulings or instructions likewise compel a new trial when the error "rendered the entire trial unfair." *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017) (citation omitted). "The crucial inquiry on review is whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 241 (4th Cir. 2016) (internal quotation marks omitted). A district court's denial of a request for a new trial "rests with the sound discretion of the trial judge and will not be reversed absent an abuse of discretion." *Hicks v. Ferreyra*, 64 F.4th 156, 174–75 (4th Cir. 2023) (quoting *Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004)).

## II.      FACTS AND PROCEDURAL HISTORY

Honeywell and OPTO are competitors in the market for bar-code scanning equipment and technology. In 2020, the Parties purported to settle extensive patent litigation at the U.S. International Trade Commission and in the United States District Court for the District of Delaware through a patent licensing agreement. The parties agree that the Agreement is governed by and to be construed under the laws of the State of Delaware (as well as applicable federal law).

In this action Honeywell claims that OPTO breached the Agreement by misstating the amount of OPTO's pre-Agreement sales of certain alleged "2D" barcode scanning products and failing to pay ongoing royalties on those products. OPTO defends that claim on the merits, contending that OPTO has in fact paid all applicable royalties (thereby reflecting the Parties' disagreement over which of OPTO's products require royalty payments). Also, OPTO asserts

affirmative defenses of quasi-estoppel and unilateral mistake based on its allegation that even if the Agreement required OPTO to pay royalties on the disputed products, Honeywell knew that OPTO believed that those products were not subject to royalty obligations and took inconsistent positions that bar Honeywell's claims of breach of contract. For its counterclaims, OPTO asserts that Honeywell has committed patent misuse and unfair trade practices because Honeywell is allegedly using the Agreement to unlawfully seek royalties on features of products for which it does not have patent protection.

The Court narrowed the dispute on summary judgment, Doc. No. 195, and the remaining contract claims, including the related affirmative defenses, were tried to a jury from July 17 to July 19, 2023. The jury returned a verdict for Honeywell on all claims. On July 19 and 20, 2023, the Court held a bench trial on OPTO's counterclaim for patent misuse. At the close of OPTO's evidence, the Court granted Honeywell's motion for judgment as a matter of law on OPTO's counterclaim.

The Parties have timely filed[3] their post-trial motions, which have been fully briefed and are ripe for the Court's decision.

---

[3] Honeywell argues that OPTO's post-trial Rule 50(b) motion is untimely because OPTO did not timely move under Rule 50(a) for judgment as a matter of law "before the case was submitted to the jury." This is a meritless argument. As Honeywell is well aware, *prior* to submission of the case to the jury, the Court informed the Parties that, "Following the close of the evidence, we'll consider any motions made, but proceed with the jury." Tr. 442:4-9. The Court handled the Rule 50 motions in this manner to avoid wasting the jury's time and to allow them to more quickly begin their deliberations, while giving the Parties a full opportunity to make a record on their motions later. Although Honeywell still made a motion (ignoring the Court's ruling), OPTO cannot properly be faulted for following the Court's order that Rule 50 motions would be "considered made" and then arguing its Rule 50 motion while the jury was deliberating. *See* Tr. 455:10-17; 510:16-511:2.

## III.    DISCUSSION

### A.    OPTO's Post-Trial Motions

OPTO's Rule 50 and 59 motions rest primarily on its contention that a February 3, 2021 "Second Amendment" to the Agreement shows the parties' mutual understanding that the products for which Honeywell is claiming unpaid royalties (what it generally refers to as "laser" and CCD products) are not subject to royalties because they are not "2D Barcode Products" under Section 1.4 of the Agreement (which defines the products on which royalties are owed). In the Second Amendment, the Parties agreed to settle their remaining dispute related to OPTO's European sales to the extent those issues had not already been resolved. *See* JX 3 (Doc. No. 375-7). Specifically, Honeywell agreed to dismiss its European infringement actions, and OPTO in turn agreed to dismiss its actions seeking to nullify some of Honeywell's European patents. *See* JX 3 at 3.5. Also, in the Second Amendment OPTO agreed to pay an annual $425,000 royalty on its European sales of 2D Barcode Products for a license to Honeywell's EX-US Patent Portfolio. *See* JX 3 at 4.9. In connection with that annual royalty payment, the parties agreed:

> The above annual royalty payments cumulatively comprise the full monetary consideration for the license granted pursuant to Section 2.7 regardless of future sales or revenue. Honeywell understands that [OPTO's] revenue from 2D Barcode Products in Europe in 2019 was €4.4 million.

JX 3 at 4.9; JX 1 (Doc. No. 375-6) at 1.4 (defining "2D Barcode Products").

According to OPTO, the evidence definitively shows that the €4.4 million amount referenced in the Second Amendment excluded all revenue from sales of OPTO's laser and CCD products. Therefore, OPTO argues that in acknowledging that it "understands that OPTO's revenue from 2D Barcode Products in Europe in 2019 was €4.4 million," Honeywell agreed that "2D Barcode Products" as defined in the Agreement does not include laser and CCD products, which encompass all the products for which royalties were not paid. In summary, OPTO contends

that if Honeywell "understood" that the disputed laser and CCD products were not included in the definition of products for which royalties were due, then there can be "no legally sufficient evidentiary basis" to sustain the jury verdict on the breach of contract claim. For the same reasons, OPTO's affirmative defenses of quasi-estoppel and unilateral mistake would also bar Honeywell's contractual claims. OPTO thus concludes that based on this allegedly "undisputed" evidence no reasonable juror could have found in Honeywell's favor, and the Court can and should enter judgment as a matter of law in favor of OPTO.

With their "Second Amendment" arguments, OPTO offers a potentially persuasive defense against Honeywell's claims; however, there are at least two fundamental problems for OPTO.[4] First, its evidence was very much "disputed" by Honeywell at trial. And, second, the jury agreed with Honeywell. At trial, Honeywell focused its testimonial and documentary evidence on the definitional language of "2D Barcode Products" in Section 1.4, specifically whether the disputed products were operable to decode a "two-dimensional barcode symbology," which it argued included "stacked" symbologies such as PDF417. It asked the jury to find that OPTO's disputed products could decode such "2D" symbologies and that royalties had admittedly not been paid on those products. With respect to OPTO's "Second Amendment" defense, Honeywell's witnesses denied that they "understood" that OPTO's European sales did not include products which could decode "two dimensional symbologies." Also, they disputed that by entering the Second Amendment (which related to settlement of a relatively small amount of European sales) that

---

[4] Honeywell also attacks OPTO's "Second Amendment" defense because OPTO did not make this argument at summary judgment or in its trial brief. While the Court agrees that there is some inconsistency (and curiosity) in OPTO now arguing the centrality and overwhelming strength of this argument as a matter of law when it failed to raise the defense until trial, parties are not required to assert all their arguments at summary judgment. Therefore, the Court has evaluated OPTO's arguments on their merits without regard to the timing of when they were first presented.

Honeywell intended to make any change to the definition of 2D Barcode Products in Section 1.4 with respect to sales in the United States or agree that all "laser" or "CCD" products were outside the scope of that definition. *See* Doc. No. 381 at 11-15.

To be sure, at trial (and in its briefing here) OPTO offered numerous cogent rejoinders to Honeywell's witnesses and arguments. And, again, had the jury agreed with OPTO, the Court would readily find that verdict to be based on sufficient evidence. But, OPTO must prove more than its Second Amendment defense could or even should have been successful; it must prove that there was no proper way for the jury to disagree with OPTO's arguments. The Court cannot make that further leap; rather, it finds that Honeywell proffered sufficient evidence that if believed by the jury (which it apparently was) supports the jury's verdict in Honeywell's favor. Therefore, OPTO's Rule 50(b) motion will be denied. Similarly, OPTO is not entitled to a new trial under Rule 59. In support of its Rule 59 motion, OPTO reprises its arguments made in support of its Rule 50 motion, which the Court declines to find are sufficient to conclude the verdict was (1) against the clear weight of the evidence; (2) based upon false evidence; or (3) will result in a miscarriage of justice. *See EEOC v. Consol Energy, Inc.*, 860 F.3d at 145.

In addition, OPTO argues that the Court's limiting instruction with respect to European sales was erroneous and warrants a new trial. The Court disagrees, both that the instruction was erroneous and that, in the absence of any objection, it requires a new trial. In connection with the introduction of Defense Exhibit 98, a document which summarized and then described in detail OPTO's European sales that were the basis for the €4.4 million referenced in the Second Amendment, the Court gave the following limiting instruction:

> Members of the jury, in Exhibit 98, Defense Exhibit 98, there are -- you will see there some numbers representing sales. Those numbers are of no moment for your consideration with respect to the claim here. This has to do with Europe. All right. But I think counsel is going to get to a different

point. But don't worry yourselves at all about the numbers in there. It has
nothing to do with what you're going to be asked to consider.

Doc. No. 366, Tr. 227:17–24. Neither party objected to the instruction nor asked that it be clarified

in any way. And, following the instruction, OPTO was given and took full advantage of an

opportunity to cross-examine Honeywell witnesses about the document and to make arguments to

explain and promote its "Second Amendment" defense to the jury.

First, as would be expected, OPTO's failure to object to the instruction at trial, when any

necessary clarifying language could have been added to the instruction, significantly affects the

Court's review of OPTO's post-trial challenge. The Fourth Circuit has made it clear that "a

motion for a new trial should not be granted [] where the moving party has failed to timely object

to the alleged impropriety giving rise to the motion." *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365,

366-67 (4th Cir. 1985); *see also Brown v. Ford Motor Co.*, 67 F. Supp. 2d 581, 587 (E.D. Va.

1999) (denying a motion for a new trial based on an allegedly improper limiting instruction that

was not objected to during trial because "a motion for a new trial should not be granted . . . where

the moving party has failed to timely object to the alleged impropriety giving rise to the motion").

However, even where a party fails to timely object to a limiting instruction, the court should review

the "otherwise waived claim for plain error if that error affects substantial rights." *EEOC v. A.C.*

*Widenhouse, Inc.*, 576 F. App'x 227, 230 (4th Cir. 2014); *see also* Fed. R. Civ. P. 51(d)(2). "For an

error to affect substantial rights, it generally 'must have been prejudicial: It must have affected the

outcome of the district court proceedings.'" *EEOC*, 576 at 231 (quoting *United States v. Olano*, 507

U.S. 725, 734 (1993)).

The Court's limiting instruction on Defense Exhibit 98 was not plain error nor did it affect the

outcome of the trial. The instruction correctly informed the jury that it need not concern itself with

the European sales figures reflected in the Exhibit. Rather, the jury was told that the exhibit was being

9

offered to make "a different point," which would be (and then was) explained by OPTO's counsel. There is no dispute that the European sales figures were themselves irrelevant to Honeywell's claims, which only included OPTO's sales in the United States. Accordingly, there was no error, much less "plain error" in the Court's instruction. Also, as clearly forecasted in the instruction, OPTO was allowed to fully pursue its Second Amendment defense both through an extensive cross-examination of Honeywell's witness and in closing arguments. Thus, the Court's "limiting" instruction in no way limited OPTO's ability to present all the evidence and arguments it wanted to the jury. That the jury was not persuaded cannot be fairly connected to the instruction.

Therefore, the Court will also deny OPTO's motion for a new trial under Rule 59.

## B. Honeywell's Motion for Attorney Fees

When considering the award of attorney's fees under Delaware law, the "'basic point of reference' is the bedrock principle known as the 'American Rule': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Donnelly v. ProPharma Grp. Topco, LLC*, No. CV 21-894-MAK, 2023 WL 5528613, at *6 (D. Del. Aug. 28, 2023) (quoting *Peter v. Nantkwest, Inc.*, 140 S.Ct. 365, 370, 205 L.Ed.2d 304 (2019)). There is no "bright-line language" to support an enforceable fee-shifting provision under Delaware law, but a contractual fee-shifting provision must be "a clear and unequivocal agreement triggered by a dispute over a party's failure to fulfill obligations under the contract." *Id.*; *Baltimore Pile Driving and Marine Constr., Inc. v. Wu Assocs., Inc.*, 2022 WL 3466066, at *2 (Del. Super. Ct. Aug. 18, 2022); *Facchina Const. Litigs.*, 2021 WL 1118115, at *2 (Del. Super. Ct. Mar. 24, 2021). Also, there must be "specific language" such as reference to a "prevailing party," which is considered by Delaware courts as "a hallmark term of fee-shifting provisions." *Braga Invest. & Advisory, LLC v. Yenni*, 2023 WL 3736879, at *18 (Del. Ch. May 31, 2023) (quoting *Murfey v. WHC*

10

*Ventures*, LLC, 2022 WL 214741, at *2 (Del. Ch. Jan. 25, 2022)). Finally, because courts require a clear and unequivocal agreement evidencing a fee-shifting provision, "[p]arties should not expect the Court to deviate from the American [R]ule if care has not been taken in drafting a contract's language." *Donnelly*, 2023 WL 5528613, at *4 (quoting *Baltimore Pile Driving and Marine Constr., Inc.*, 2022 WL 3466066 at *1).

In sum, unlike other contract provisions which the Court must interpret without any assumptions or "default" position, (for example, there is no governing Delaware rule on which products are subject to a license royalty), unless Honeywell establishes a clear and unequivocal contractual or statutory right to attorney fees, the Court must deny the request. Subject to this "bedrock" principle, Delaware law adheres to the objective theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party," and the goal of contract interpretation is to "effectuate the parties' intent." *Donnelly*, 2023 WL 5528613, at *6-7. Courts interpret contracts to "give each provision and term effect" and not render any terms "meaningless or illusory." *Id*. All contracts must be read as a whole, giving meaning to each term and avoiding an interpretation rendering any term "mere surplusage." *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp*., 206 A.3d 836, 846 (Del. 2019).

In addition to Section 4.7, the single provision of the Agreement on which Honeywell bases its request for attorney fees, there are a number of relevant sections of the Agreement that the Court must consider (copied below in the order they appear in the Agreement):

### Background

**B**. In civil action 1:19-cv-01010-CFC filed in the United States District Court for the District of Delaware ("DELAWARE ACTION"), HONEYWELL asserted claims against OPTICON for infringing claims of the same patents that were at issue in the ITC investigation and sought a declaration of infringement, damages, interest, ***attorney fees***, and accounting of damages, costs of suit, and equitable relief.

(Doc. No. 118-2, at 2) (emphasis added).

**3.2 <u>Dismissal</u>**. Each Party shall bear its ***own costs, expenses, and attorneys' fees*** in connection with this Agreement, the ITC INVESTIGATION and the DELAWARE ACTION."

(Doc. No. 118-2, at 7) (emphasis added).

**4.7 <u>Collection</u>**. In the event a Party must ***institute an action*** to collect any overdue payments, that Party shall be entitled to its ***fees and costs incurred*** with respect to such an action. Prior to the institution of any such action, the Party shall ***provide the other with Notice of the overdue payments and ten (10) days*** to satisfy any outstanding obligation.

(Doc. No. 118-2, at 8) (emphasis added).

**9.8 <u>Dispute Resolution</u>**. Before any Party can ***commence any action in court*** against the other Party arising out of or relating to this Agreement, such Party shall first give notice to the other Party of the basis for the dispute and must ***seek to resolve such dispute through conferring with the other Party for a period of thirty (30) days.*** If agreement is not reached within thirty (30) days after such notice or such further period as the Parties may agree, only then may a Party bring such dispute before a court. In any such action, the Parties shall have all remedies available to them under applicable law.

(Doc. No. 118-2, at 16) (emphasis added).

<u>Exhibit C</u>
Alternate Dispute Resolution Process
…
**<u>Loser Pays</u>**. The Party prevailing at a Step of the Third Party Review shall recover up to all its reasonable ***attorneys' fees*** and costs for work performed in relation to that Step, to be determined at the discretion of the Arbitrator.

(Doc. No. 118-2, at 28) (emphasis added).

As summarized briefly at the beginning of this Order, the Court finds that Honeywell has failed for several independent reasons (also considered collectively) to carry its burden to show a clear and unequivocal agreement to shift attorney fees to OPTO. First, and perhaps most obvious, the contract section on which Honeywell relies does not say Honeywell is entitled to "attorney" or "legal" fees. Indeed, Honeywell has not cited a single case in which attorney fees were awarded based on a contractual provision that referred only to "fees" without any reference to "attorney"

fees. *See Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at \*1 (Del. Ch. Apr. 27, 2004) ("… *the prevailing party shall be entitled to recover its costs, including reasonable attorneys' fees*.") (emphasis in original); *Knight v. Grinnage*, 1997 WL 633299, at \*3 (Del. Ch. Oct. 7, 1997) (denying request for attorneys' fees, holding: "I assume the parties recognize they had an opportunity to bargain for that provision and for their own 'market' related reasons declined to do so. Therefore, I will not restructure their bargain and *sua sponte* reform the contract to include such a provision."); *L&W Ins., Inc. v. Harrington*, 2007 WL 1756540, at \*1 (Del. Ch. June 6, 2007) ("… if there be a prevailing party, shall be entitled to recover, in addition to costs of suit, such ***reasonable attorney's fees*** as the tribunal determining the action may award.") (emphasis added); *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 352, n.107 (Del. 2013) ("The Issuer will defend … from and against any and all claims, … or expenses of whatever kind or nature ... (***including, without limitation, counsel and consultant fees and expenses*** ...) arising out of this Agreement . . . .") (emphasis added); *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at \*1 (Del. Ch. Aug. 13, 2010) (requiring defendant "to bear all of the expenses, ***including attorneys' fees***, that Aveta has incurred because of [his] contempt.") (emphasis added); *GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 478 (D. Del. 2003) (awarding attorney fees in the context of a Stock Purchase Agreement that indemnified the buyer "from … costs, fees and expenses (including without limitation, **reasonable attorneys … fees**…incurred in connection with any matter indemnifiable…)";[5] *see also Braga*, 2020 WL 5416516, at \*3 (rejecting request

---

[5] In *GB Biosciences*, the primary issue before the court was whether the buyer was entitled to reimbursement of "expenses" prior to a judicial determination that those expenses were reasonable. After deciding that question, in the final paragraph of the opinion, the court rejected an argument that "expenses" in the section describing the process for obtaining reimbursement did not include attorneys' fees. Curiously (and unnecessarily), the court decided the attorneys' fees question by reference to a dictionary definition of "expenses" instead of simply referring to the express

for attorneys' fees in part because "the operative term of the contract" on which the motion was based "does not even mention attorneys' fees"); *Paul Elton, LLC v. Rommel Delaware, LLC*, 2022 WL 793126, at *3 (Del. Ch. Mar. 16, 2022) (finding that one provision of the contract did not provide for attorneys' fees where a different provision specifically awarded attorneys' fees, which "demonstrat[ed] that the parties were capable of drafting the sort of clear and unequivocal language required to shift fees when they so intended").

Further, there is no dispute that in drafting the Agreement, Honeywell and OPTO were represented by sophisticated and experienced counsel, who know how to say "attorney fees" when they want to do so. As recited above, in at least three other sections of the Agreement – the Background, Section 3.2 and Exhibit C – the Agreement specifically refers to "attorney(s) fees." Most striking is Exhibit C in which the parties agreed to a "Loser Pays" provision[6] in which the "Party prevailing … shall recover up to all its reasonable ***attorneys' fees*** and costs." (Doc. No. 118-2, at 28) (emphasis added). Unlike Section 4.7, Exhibit C is a clear and unequivocal agreement to shift attorneys' fees and costs.

Beyond the demonstrated ability of Honeywell's counsel to agree to clear language that shifts an entitlement to recover attorneys' fees to a prevailing party in Exhibit C of the Agreement, Honeywell has also negotiated clear attorneys' fees provisions in similar license agreements[7]

---

language of the contract defining recoverable indemnification expenses to include "attorneys' fees." Thus, the Court finds *GB Biosciences* unpersuasive in support of Honeywell's argument for a "broad" reading of "fees" without reference to "attorneys" fees.

[6] The Court notes that despite OPTO highlighting this section of the Agreement in its responsive arguments, Honeywell did not provide any reply to those arguments or even mention this critical section of the Agreement in its Reply brief.

[7] Honeywell asks the Court not to consider "extrinsic" evidence related to other license agreements (the authenticity of which it does not challenge) because Section 4.7 is "unambiguous." The Court cannot conclude Section 4.7 is "unambiguous" as it relates to "attorneys" fees based on the other references to "attorneys' fees" in the Agreement and the lack of clarity in the language used.

related to the same bar-code scanning patents and types of products. For example, in its settlement and license agreement with Datalogic, Honeywell included the following provision allowing recovery of reasonable attorneys' fees:

> 11.13. Attorneys' Fees and Costs. In the event any action or proceeding is brought by either Party in connection with this Agreement, ***the prevailing Party in such action or proceeding will be entitled to recover its costs, expert witness fees, and reasonable attorneys' fees***, including costs and fees on appeal from the non- prevailing party.

Doc. No. 372-2 at 13-14 (emphasis added). Similarly, in its settlement agreement with Zebra, Honeywell included the following attorneys' fees provision:

> 12. Attorneys' Fees. Subject to the terms herein, each party shall bear its own attorneys' fees (except as provided in Section 3.2) and related expenses incurred by or on behalf of said Party in connection with the Actions and the preparation and negotiation of this Agreement. In addition to damages awarded, ***in the event of litigation to enforce a provision of this Agreement, the party seeking to enforce the provision, if successful, is entitled to seek its reasonable attorneys' fees, costs, and expenses***.

Doc. No. 372-2 (PX-202) at 17, § 9.12 (emphasis added). These examples are further proof that when Honeywell wanted to negotiate a clear provision shifting attorneys' fees to a prevailing party it knew how to do so. Again, because courts require a clear and unequivocal agreement evidencing an attorney fee-shifting provision, "[p]arties should not expect the Court to deviate from the American [R]ule if care has not been taken in drafting a contract's language." *Donnelly*, 2023 WL 5528613, at *4.

Section 4.7 also fails as an attorney "fee-shifting" provision because it lacks a reference to a "prevailing party." *See Donnelly*, 2023 WL 5528613, at *6. Instead, an award under Section 4.7 on its face simply flows from the institution of an action and does not require the party filing

---

Therefore, it is appropriate for the Court to consider the extrinsic evidence offered. However, the Court notes that its consideration of Honeywell's other license agreements only corroborates what is already apparent from the Agreement itself and the Court would have reached the same result even if it had not considered any extrinsic evidence.

the action to prevail. In *Baltimore Pile Driving and Marine Construction, Inc.*, the Delaware Superior Court found no basis to shift attorneys' fees from contract language stating, "[a]ll legal fees resulting from [Plaintiff's] need to secure legal services for any infraction of the terms and conditions of this Executed Proposal or any Contract/Purchase Order, and any disputes arising from the contract [sic] to be adjudicated in Harford County, Maryland" in part because there is no reference to a "prevailing party." *Baltimore Pile Driving*, 2022 WL 3466066, at * 1, *3. The court reasoned the sophisticated counsel representing the parties would know how to draft a fee-shifting provision under Delaware law and concluded the provision "is poorly drafted and lacks sufficient clarity" to be a clear and unequivocal enforceable agreement for fee-shifting. *Id*. Similarly, in *Murfey v. WHC Ventures, LLC* the Delaware Chancery Court found the parties did not agree to fee-shifting when reviewing the agreement as a whole because, as here, another section of the agreement contained a fee-shifting provision, shifting attorneys' fees to the "prevailing party" in an arbitration. The court concluded the later provision supported an interpretation the earlier provision did not encompass fee-shifting in litigation. *See Murfey,* 2022 WL 214741, at * 2. As in *Donnelly*, the Court must "observ[e] with particular obedience" language of fee-shifting agreements so as not to "swallow the American Rule." *Donnelly*, 2023 WL 5528613, at *7.

Finally, it is unclear from the Agreement if Section 4.7 even applies to this "court" dispute. By its terms, Section 4.7 applies to "an action" and requires a party to give only 10 days' notice prior to institution of the action. In contrast, Section 9.8 specifically applies to "any action in court against the other party" and requires a 30 day period for the party to give notice and confer with the other party to resolve their dispute. Therefore, if Section 4.7 also applies to court actions then its 10 day notice period requirement would be unnecessary because Section 9.8 already mandates

16

30 days' notice. Further, Section 9.8 has no language even arguably shifting attorneys' fees. So, it also seems inconsistent for the Parties to not agree to shift attorneys' fees in the provision governing court actions (which are otherwise subject to significantly *more* efforts to reach a settlement) than actions subject to Section 4.7. As noted above, the Court is obligated to interpret contracts to "give each provision and term effect" and not render any terms "meaningless, illusory or mere surplusage." See *Sunline*, 206 A.3d at 846. Giving full meaning to both Section 4.7 and 9.8 thus further undercuts Honeywell's efforts to portray Section 4.7 as a "clear and unequivocal" agreement to shift attorneys' fees in this litigation.

In summary, as discussed at the outset, the Court must decide Honeywell's request for attorneys' fees under Section 4.7 under the strict constraints of the American Rule, where each party must bear its own attorneys' fees unless there is a "clear and unequivocal" agreement to shift attorneys' fees. Honeywell has failed to meet that burden; accordingly, its motion for attorneys' fees will be denied.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiffs' Motion for Fees and Costs  (Doc. No. 360) is **DENIED**; and

2. Defendant's Motion for Judgment as a Matter of Law, Alternative Rule 59 Motion for a New Trial and Renewed Motion for Summary Judgment (Doc. No. 374) is **DENIED**.

**SO ORDERED ADJUDGED AND DECREED**.

Signed:   September 27, 2023

Kenneth D. Bell
United States District Judge

17